NEYMAN ET AL., RESPONDENTS, *v.* PINCUS ET AL., APPEL-
LANTS.

(Nos. 6,266, 6,267.)

(Submitted May 3, 1928. Decided May 29, 1928.)

[267 Pac. 805.]

*Real Property—Adjoining Owners—Excavations—Removal of
Lateral Support—Extent of Duty of Owners—Notice to
Adjoining Owner, not Tenant, Required—Independent Con-
tractors—When Contractee not Liable for Injury to Prop-
erty — Evidence of Negligence — Insufficiency — Owner and
Contractor Co-defendants—Reversal of Judgment—Affirm-
ance as Against Contractor Alone not Permissible, When.*

Master and Servant—"Independent Contractor"—Definition.
    1. An independent contractor is one who renders service in the
    course of an occupation and represents the will of his employer
    only as to the result of his work, not as to the means whereby it
    is accomplished, and is usually paid by the job.

Same—Independent Contractor—Adjoining Land Owners—Excavating
on City Lot—When Contractee not Liable for Injury from Negli-
gent Performance of Work.
    2. As a general rule, where the relation of independent contrac-
    tor exists and due diligence has been exercised by the contractee
    in the selection of a competent contractor, and the thing contracted
    to be done (excavating on a city lot) is not in itself a nuisance nor
    becomes such if precautionary measures are used, and injury re-
    sults from the wrongful and negligent manner in which the work
    is done, the contractee is not liable therefor; he, however, owes
    the primary duty to his neighbor not to contract for the perform-
    ance of work the necessary or probable result of which will be an
    injury to third persons.

Real Property—Adjoining Land Owners—Removal of Lateral Support
by Contractor—Injury to Property—*Respondeat Superior.*
    3. *Quaere:* Does the rule of *respondeat superior* apply in an action
    for damages resulting from the collapse of a building caused by the

---

1. Who is independent contractor, see notes in 19 Ann. Cas. 3; Ann.
Cas. 1913B, 573; Ann. Cas. 1916D, 222; Ann. Cas. 1918C, 627, 663, 669,
672; 65 L. R. A. 445; 17 L. R. A. (n. s.) 371; 19 A. L. R. 226. See,
also, 13 Cal. Jur. 1014; 14 R. C. L. 67.
2. Liability for negligence or other torts of independent contrac-
tor, see notes in 76 Am. St. Rep. 382; 66 L. R. A. 622; 18 A. L. R.
839. See, also, 14 R. C. L. 79. Liability of land owner for excava-
tion on premises resulting in injury to adjoining building as affected
by employment of independent contractor, see notes in 21 Ann. Cas.
23; Ann. Cas. 1917A, 356; 23 A. L. R. 997; 50 A. L. R. 513. See, also,
1 Cal. Jur. 414; 13 Cal. Jur. 1049.

removal of its lateral and subjacent support by a contractor in ex-
cavating for a building on the adjoining lot, under contract with
the owner of the lot?

Same—Adjoining Land Owners—Lateral Support—Extent of Duty of
Owner Causing Excavation to be Made.
4. The duty owed by a land owner to an adjoining owner not
to deprive the latter's land of its lateral and subjacent support
by an excavation on his own land does not extend to the support
of any structure which the latter has placed on the adjoining
lot, and if a building thereon is destroyed by reason of an ex-
cavation conducted lawfully and with care and which would not
have caused the land itself, in its natural condition, to fall, the
injury is *damnum absque injuria.*

Same—Doctrine of Right by Prescription—When Applicable.
5. The doctrine of right by prescription can be applied only
where one permits a condition to exist which he might have pre-
vented by timely action during the statutory period.

Same—Adjoining Owners—Lateral Support—Duty of Owners.
6. Where the owner of a city lot makes an excavation thereon
it is not his duty to make provision for the support of a building
standing on the lot of his neighbor, that duty resting upon the
latter, and if he nevertheless does so he cannot recover from the
adjoining owner the amount necessarily expended for that pur-
pose.

Same—Adjoining Owners—Removal of Lateral Support—When Action
for Damages Lies.
7. An action for injury to a building caused by excavating an
adjoining lot lies only where the work of excavating was done
in such a careless and improper manner that it occasioned the
injury, or where the excavator removed soil from the adjoining
lot on which the building stood.

Same—Adjoining Owners—Injury Due to Excavation on City Lot—
Evidence—Insufficiency.
8. Evidence *held* to show, in an action by tenants in a building
on a lot adjoining that on which defendants conducted excava-
tion operations, for damages to their stock in trade by reason of
the collapse of the wall next to the excavation, that the land
on which the building stood in its natural condition would not
have subsided, and that the wall did not fall until the contractor
also employed by the owner of the building to place supports
under it attempted to do so, and hence that defendants were not
liable.

Same—Excavation on City Lot—Notice to Adjoining Owner—Suffi-
ciency.
9. The notice required by section 6773, Revised Codes 1921, to
be, given by a lot owner to an adjoining owner of his intention to
make excavations, in the absence of a specific provision as to the
manner in which it is to be given, may be served in a way best calcu-

---

4. Right to lateral support from adjoining land, see notes in 66
Am. Dec. 646; 29 Am. Rep. 339; 33 Am. St. Rep. 446; 1 R C. L.
383. Liability for resulting injury to adjoining building by excavat-
ing on own premises, see notes in 21 Ann. Cas. 15; Ann. Cas. 1917A,
352; 6 L. R. A. (n. s.) 242; 50 A. L. R. 486. See, also, 1 Cal. Jur.
409, 413; 1 R. C. L. 381, 383.

5. Prescriptive right of adjoining land owners to lateral support,
see notes in 7 Am. Dec. 62; 20 L. R. A. 730. See, also, 1 Cal. Jur. 410;
1 R. C. L. 381.

[82 Mont. 467.]

lated to bring the matter to his attention, and where such a notice in writing was left at the adjoining owner's home for delivery to him on his return to the city on the day the excavation was commenced, it was sufficient.

Same—Notice of Excavation to Adjoining Owner, not Tenant, Required by Statute.

10.  Section 6773, above, provides for notice to the adjoining owner only, and therefore notice to his tenants is not required.

Same — Excavation on City Lot to Adjoining Owner — Notice Held not Misleading.

11.  Notice to an adjoining owner that the giver of it was excavating for a basement on his lot which excavation would go below the wall of the former's building, and that "while all reasonable care will be taken in doing this excavating so as not to unreasonably jeopardize your wall," his attention was called to the very unsafe condition of said wall, *held* sufficient and not rendered misleading by the insertion of the quoted words.

Same—Collapse of Wall Due to Excavation on Adjoining Lot—Owner and Contractor Co-defendants—Insufficiency of Evidence—Affirmance of Judgment as to Contractor for Negligence not in Issue not Permissible.

12.  Where an action for damages for the destruction of lateral and subjacent support from a city lot was brought and tried on the theory of negligent excavation on the adjacent one and not on the theory that the contractor, made a defendant, who had also been employed by plaintiff to underpin the wall of his building, had done the latter work negligently, and the evidence did not sustain the judgment against defendants as to the question of negligence tried, the supreme court may not affirm the judgment as to the contractor on a question not in issue in the case appealed.

---

[1]    Master and Servant, 39 **C. J.**, sec. 1517, p. 1315, n. 1.
[2]    Master and Servant, 39 **C. J.**, sec. 1530, p. 1324, n. 11; sec. 1535, p. 1328, n. 51.
[3]    Adjoining Land Owners, 1 **C. J.**, sec. 53, p. 1222, n. 3.
[4]    Adjoining Land Owners, 1 **C. J.**, sec. 29, p. 1212, n. 3; sec. 31, p. 1213, n. 11; sec. 36, p. 1214, n. 27; sec. 39, p. 1216, n. 37.
[5]    Adjoining Land Owners, 1 **C. J.**, sec. 34, p. 1214, n. 22.
[6]    Adjoining Land Owners, 1 **C. J.**, sec. 44, p. 1218, n. 61; sec. 45, p. 1219, n. 62.
[7]    Adjoining Land Owners, 1 **C. J.**, sec. 31, p. 1213, n. 11; sec. 40, p. 1216, n. 41; sec. 43, p. 1218; n. 57.
[8]    Adjoining Land Owners, 1 **C. J.**, sec. 70, p. 1224, n. 42.
[9,10]  Adjoining Land Owners, 1 **C. J.**, sec. 41, p. 1218, n. 53.
[11]   Adjoining Land Owners, 1 **C. J.**, sec. 42, p. 1218, n. 54.
[12]   Appeal and Error, 4 **C. J.**, sec. 3218, p. 1184, n. 43.

*Appeal from District Court, Silver Bow County; George Bourquin, Judge.*

ACTION by Joseph Neyman, personally and as trustee for Lena Neyman and others, against Adolph Pincus and others,

---

11.  See 1 **Cal. Jur.** 412; 1 **R. C. L.** 386.

as directors of the Northwestern Realty Company, and others. Judgment for plaintiffs and defendants appeal. Reversed and remanded, with direction to enter judgment for defendants.

*Mr. J. A. Poore,* for Appellants Andrew J. Davis, Andrew J. Davis, Jr., and Adolph Pincus, as Trustees, submitted a brief and argued the cause orally.

The work of excavating was performed by independent contractors (*Jensen* v. *Barbour,* 15 Mont. 582, 39 Pac. 906; *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673), and Northwestern Realty Company would not be liable for any act of neglect on their part in the performance of the work, unless the particular contract comes within well-recognized exceptions to this general rule, pointed out in 39 C. J., p. 1324, and cases cited; 14 R. C. L., sec. 17, p. 79. (See, also, *Aston* v. *Nolan,* 63 Cal. 269; *Williams* v. *Fresno Canal & Irr. Co.,* 96 Cal. 14, 31 Am. St. Rep. 172, 30 Pac. 961; *Schmidlin* v. *Alta Planing Mill Co.,* 170 Cal. 589, 150 Pac. 983; *Hoff* v. *Shockley,* 122 Iowa, 720, 101 Am. St. Rep. 289, 64 L. R. A. 538, 98 N. W. 573; *Boomer* v. *Wilbur,* 176 Mass. 482, 53 L. R. A. 172, 57 N. E. 1004; *Salliotte* v. *King Bridge Co.,* 191 U. S. 569, 48 L. Ed. 306, 24 Sup. Ct. Rep. 841; 122 Fed. 378, 65 L. R. A. 620, and note; *Richmond* v. *Sitterding,* 101 Va. 354, 99 Am. St. Rep. 879, 65 L. R. A. 445, and note, 43 S. E. 562; *Scammon* v. *City of Chicago,* 25 Ill. 424, 79 Am. Dec. 334; *St. Louis & S. F. R. Co.* v. *Madden,* 77 Kan. 80, 17 L. R. A. (n. s.) 788, 93 Pac. 586; *Cary* v. *Sparkman & McLean Co.,* 62 Wash. 363, 113 Pac. 1093; *Alhberg* v. *Louis Min. Co.,* 29 Ariz. 313, 241 Pac. 510; *Stockgrowers' Bank of Wheatland* v. *Gray,* 24 Wyo. 18, 154 Pac. 593; *Myer* v. *Hobbs,* 57 Ala. 175, 29 Am. Rep. 719; *Harrison* v. *Kiser,* 79 Ga. 588, 4 S. E. 320; *McGrath* v. *St. Louis,* 215 Mo. 191, 114 S. W. 611; *Smith* v. *Howard,* 201 Ky. 249, 256 S. W. 402; note, 50 A. L. R. 514.)

The building occupied by plaintiffs fell while the owner thereof, under a contract made between himself and a con-

tractor, was underpinning and supporting the same, after notice of the excavation to be made.

The plaintiffs, who were the tenants, had actual notice of the progress of the work from its commencement, according to their own admissions. And even if the statute (sec. 6773, Rev. Codes 1921) could be construed as requiring notice to them, written notice was not necessary. (*Schultz* v. *Byers,* 53 N. J. L. 442, 26 Am. St. Rep. 435, 13 L. R. A. 569, 22 Atl. 514; *Novotny* v. *Danforth,* 9 S. D. 301, 68 N. W. 749; *Jamison* v. *Myrtle Lodge,* 158 Iowa, 264, 139 N. W. 547; *First National Bank* v. *Villegra,* 92 Cal. 96, 28 Pac. 97.) The form of the notice given was sufficient. (*Nippert* v. *Warneke,* 128 Cal. 501, 61 Pac. 97, 270.)

The ground of which lot 12 was composed would have stood in its natural condition without any support, but the building erected thereon added lateral pressure to the lot on which it was erected. "The right to lateral support pertains only to the land in its natural condition, and does not extend to encumbering buildings or structures which increase the lateral pressure." (1 C. J., sec. 31; 1 Cal. Jur., sec. 19; 1 R. C. L., sec. 15; *Transportation Co.* v. *Chicago,* 99 U. S. 635, 25 L. Ed. 336 [see, also, Rose's U. S. Notes]; *Aston* v. *Nolan,* supra; *Sullivan* v. *Zeiner,* 98 Cal. 346, 20 L. R. A. 730, 33 Pac. 209; see *Starrett* v. *Baudler,* 181 Iowa, 965, L. R. A. 1918B, 528, 165 N. W. 216; as to weight of American authority of no liability for damage to building.)

"It is incumbent on a land owner who seeks to recover for injury to his land in its natural condition to show that the structures thereon did not contribute to the injury." (1 C. J., sec. 6, p. 1224; *Busby* v. *Holthaus,* 46 Mo. 161.)

While a person excavating on his own lot may be required to accept his neighbor's building as he finds it (note 50 A. L. R., p. 512), yet if the land would have stood in its natural condition without the weight of the building, as the evidence in this case conclusively shows, there was no duty resting on the defendants to support this additional weight or defectively

constructed building. (*Jamison* v. *Myrtle Lodge,* 158 Iowa, 264, 139 N. W. 548.)

Where the record shows that the plaintiffs in the case, with knowledge of the progress of the work of excavating, stood by and did nothing to protect their own property, their contributory negligence should prevent a recovery. (*Jones* v. *Hacker,* 104 Kan. 187, 178 Pac. 425; *Lasala* v. *Holbrook,* 4 Paige (N. Y.), 169, 25 Am. Dec. 524; *Johnston* v. *Hyre,* 83 Kan. 38, 109 Pac. 1075; *Gillies* v. *Eckerson,* 97 App. Div. 153, 89 N. Y. Supp. 609.)

*Messrs. Walker & Walker,* for Appellants Jesse Huddleston and Sam Cook, contractors, submitted a brief.

*Messrs. Wheeler & Baldwin* and *Miss Fanney Neyman,* for Respondents, submitted briefs; *Mr. James H. Baldwin* argued the cause orally.

It is well settled that one who employs an independent contractor is liable when the work to be done is in its nature dangerous to others, however carefully performed, because it is incumbent upon him to foresee such dangers and to take precautions against them. The contract controls and directs the action which causes the injury. In such a case the injury does not result from the manner in which the work is done but from the fact that it is done at all, and the contractor in following the contract becomes the agent or servant of the employer. (*St. Louis etc. Ry. Co.* v. *Madden,* 77 Kan. 80, 17 L. R. A. (n. s.) 788, 93 Pac. 588; *Williams* v. *Fresno Canal Co.,* 96 Cal. 14, 31 Am. St. Rep. 172, 30 Pac. 961; *Holter Hardware Co.* v. *Western Mortgage etc. Co.,* 51 Mont. 98, 149 Pac. 489; notes, 21 A. L. R. 1230; 23 A. L. R. 1086; 65 L. R. A. 750.) When one contracts for certain work to be done, and an injury is occasioned to a third person as the direct result of the doing of the work, not as the result of negligent acts of the contractor, the employer is liable for such injury. (14 R. C. L., sec. 23; *Williams* v. *Fresno Canal Co.,* supra;

*De Palmo* v. *Weinman,* 15 N. M. 68, 24 L. R. A. (n. s.) 423,
103 Pac. 782; *Giachoni* v. *Astoria,* 60 Or. 24, 113 Pac. 855,
118 Pac. 180; *Walker* v. *Strosnider,* 67 W. Va. 39, 21 Ann.
Cas. 1, 5, 12, 25, 67 S. E. 1087; *Hedstrom* v. *Union Trust Co.,*
7 Cal. App. 278, 94 Pac. 388.) The rule is, that if the work
is done according to the plans of the employer or methods
prosecuted by him he is liable for injuries occasioned to third
persons. (14 R. C. L., sec. 23; *St. Louis etc. Co.* v. *Madden,*
77 Kan. 80, 17 L. R. A. (n. s.) 788, 93 Pac. 586; *Meier* v.
*Morgan,* 82 Wis. 289, 33 Am. St. Rep. 39, 52 N. W. 174, 177;
*Hedstrom* v. *Union Trust Co.,* supra; *Eeraert* v. *Eureka
Lumber Co.,* 43 Mont. 517, 117 Pac. 1060.)

For liability to attach to the employer of an independent
contractor it is not required that it be absolutely necessary
that injuries to third persons will result from the doing of
the work, but if the work is so inherently or intrinsically
dangerous that danger will probably be occasioned to third
persons unless proper precautions are taken, the employer is
liable for such injuries, though primarily they may be caused
by the negligence of the contractor in failing to take the
steps necessary to avoid the danger, and if the work is in-
herently dangerous it is not an essential element of the
employer's liability that the particular injury was foreseen or
authorized. It is sufficient that some injury was likely to
result as the reasonable and natural consequence of his negli-
gence. (14 R. C. L., sec. 24; *Eeraert* v. *Eureka Lumber Co.,*
supra; *Holter Co.* v. *Western Mortgage Co.,* supra; *Fagan* v.
*Silver,* 57 Mont. 427, 188 Pac. 900; *Ruehl* v. *Lidgerwood Tel.
Co.,* 23 N. D. 6, Ann. Cas. 1914C, 680, 135 N. W. 793; *Rock* v.
*American Construction Co.,* 120 La. 831, 14 Ann. Cas. 653, 654,
45 South. 741.)

The doing of the work as planned and directed by the
Northwestern Realty Company necessarily involved a trespass.
Where one plans or directs a work which necessarily involves
a trespass on the premises of another he cannot justify the
wrongful act by the plea that the work is done by an inde-

pendent contractor. Where a trespass has been committed upon the rights or property of another by the agents or direction of a defendant it is wholly unimportant what control or other relation exists between the immediate agent of the wronged and the person sought to be charged. The latter cannot shelter himself under the plea that the immediate wrongdoer did the act in execution of a contract or that he came within the definition of an independent contractor as to the performance of the work in the execution of which the tortious act was committed. If he contracted for, advised or directed the act his liability is established. (14 R. C. L., sec. 26; 39 C. J. 1329, sec. 1536; *Williams* v. *Fresno Canal Co.,* supra; *Hedstrom* v. *Union Trust Co.,* supra; *Walker* v. *Strosnider,* supra; *Kershishian* v. *Johnson,* 210 Mass. 135, 36 L. R. A. (n. s.) 402, 405, 96 N. E. 56; *Eeraert* v. *Eureka Lumber Co.,* supra; *Fagan* v. *Silver,* supra.)

It is generally held that if the owner of land employs a contractor to make an excavation therein in such a manner that the lateral support of an adjoining land owner is taken away the rule of *respondeat superior* is applicable and the liability of the owner causing the excavation to be made is to be determined as though he actually made the excavation himself. (14 R. C. L., p. 93, sec. 30; *Ruehl* v. *Lidgerwood Rural Tel. Co.,* 23 N. D. 6, 3 Ann. Cas. 1914C, 680, 135 N. W. 793; *Missoula Public Service Co.* v. *Bitter Root Irr. Co.,* 80 Mont. 64, 257 Pac. 1038; *Gildersleeve* v. *Hammond,* 109 Mich. 431, 67 N. W. 519; *Bonaparte* v. *Wiseman,* 89 Md. 12, 44 L. R. A. 482, 42 Atl. 918; *Cabot* v. *Kingman,* 166 Mass. 403, 33 L. R. A. 45, 44 N. E. 344; *De Palma* v. *Wienman,* 15 N. M. 68, 24 L. R. A. (n. s.) 423, 103 Pac. 782; *Walker* v. *Strosnider,* 67 W. Va. 39, 21 Ann. Cas. 1, 11, 67 S. E. 1087; *Hedstrom* v. *Union Trust Co.,* 7 Cal. App. 278, 94 Pac. 386.)

By the statute (sec. 6773, Rev. Codes 1921) an absolute right is granted to the coterminous owner to have his land supported by the land of the adjoining owner, and if he makes excavations on his own land for the purposes of construction he

is under an express statutory duty to use reasonable precautions to sustain the land of his coterminous owner, and a failure on the part of the excavating owner to perform this duty with consequent damage to another amounts to negligence per se. (14 R. C. L., sec. 36; *Smith* v. *Milwaukee Builders & Trades Exchange,* 91 Wis. 360, 51 Am. St. Rep. 912, 30 L. R. A. 504, 64 N. W. 1041; *Missoula Trust etc. Bank* v. *Northern Pac. Ry. Co.,* 76 Mont. 201, 213, 245 Pac. 949; *Green* v. *Berg,* 105 Cal. 52, 45 Am. St. Rep. 25, 38 Pac. 539.)

Where, as in the case at bar, the excavation is such as will naturally tend to injure the adjoining property, it should be made in sections so that the building on the adjoining land can be maintained in safety. (1 R. C. L., sec. 20; *Davis* v. *Summerfield,* 131 N. C. 352, 92 Am. St. Rep. 781, 42 S. E. 818; 133 N. C. 325, 63 L. R. A. 492, 45 S. E. 654; *Walker* v. *Strosnider,* supra; *Conboy* v. *Dickinson,* 92 Cal. 600, 28 Pac. 809, 810; *Gildersleeve* v. *Hammond,* 109 Mich. 431, 67 N. W. 519, 521; *Bissell* v. *Ford,* 176 Mich. 64, 141 N. W. 863.)

A notice that an excavation is to be made on an adjoining lot, to be sufficient, must inform the person to whom it is given of the nature and extent of the excavation, so that he may, after the excavator has done all that is reasonably prudent for the safety of the building, take the necessary precautions to protect his property absolutely. (*Moore* v. *Anderson,* 5 Boyce (Del.), 477, 94 Atl. 771; *Stockgrowers' Bank* v. *Gray,* 24 Wyo. 18, 154 Pac. 593, 598; *Walker* v. *Strosnider,* supra.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Plaintiff brought action originally against the Northwestern Realty Company, a corporation, as owner of certain lots on which an excavation was made for building purposes, and Jesse Huddleston and Sam Cook, as the contractors who made

the excavation, for damages resulting when a building, standing on an adjoining lot and in which plaintiffs were conducting a mercantile business, fell by reason of the removal of the lateral and subjacent support from the lot.

It is not necessary to set out the allegations of the pleadings at length. The action is primarily against the realty company and is based upon the theory that it owed to plaintiffs a duty, as occupants of the building, to so conduct its excavating operations as not to disturb the lot on which the building stood and a violation of that duty. The contractors were joined as the agents or servants of the realty company. The complaint alleges that the nature of the subsoil of the lots in question is such that the wall of the excavation made therein would not stand without artificial support and that the care, skill and caution required in making such an excavation dictated that the south wall of the excavation be made in sections and the new foundation erected in each section before further support was removed from the adjoining lot, which method defendants negligently failed to adopt.

The realty company and the contractors interposed separate answers; the realty company denied liability generally; the contractors denied liability and alleged that the work next to the building in question was done under an independent contract and that the work done under the realty company contract did not result in the damage alleged by the plaintiffs.

Issue was joined by reply to each of the answers interposed. Thereafter the term of the realty company, as a corporation, expired and the directors thereof Adolph Pincus, Andrew J. Davis, and Andrew J. Davis, Jr., were substituted as defendants, as trustees for the creditors and stockholders of the corporation.

A trial was had to the court with a jury. At the close of the plaintiffs' case the trustees and the contractors separately moved for judgment of nonsuit, which motions were denied, and defendants thereupon introduced testimony. At the close of all of the evidence the trustees and the contractors separately

moved for a directed verdict, which motions were overruled. The trial resulted in a verdict in favor of plaintiffs and against all defendants jointly, and judgment was duly entered thereon. The trustees and the contractors have each appealed from this judgment, but the two appeals are presented on identical records, and have been submitted jointly, and, for the purposes of this opinion, will be considered as one.

The trustees have made forty-nine assignments of error, certain of which are duplicated by the contractors. Few of these assignments are necessary to a determination of these appeals and those will sufficiently appear from our discussion of the questions considered. The record is voluminous, the evidence alone consisting of approximately 500 pages of printed matter, but the following brief summary will disclose the facts on which the verdict and judgment are based:

In June, 1922, the Northwestern Realty Company, owner of lots 10 and 11 in block 41 of the original town site of Butte, secured plans and specifications from Herman Kemna, a competent architect, for the erection thereon of a substantial building. These lots are in the west half of the block facing on Main Street. Lot 10 corners on Main and Galena Streets; lot 11 lies to the south, and so on down the block. The map and plat of the town site shows the lots in this half block not to be equal in width; lot 10 being 20 feet wide, lot 11, 38 feet wide, and lot 12, lying to the south of 11, being 36 feet wide, the six lots facing on Main Street, having a total front footage of 210 feet. However, actual survey and measurement shows that the total width of the block is 210 feet and 7½ inches, the overplus being unaccounted for.

One Hum Yow is the owner of lot 12 and, at the time the realty company arranged for the erection of the building, there stood on lot 12 an ancient one-story building of brick and frame construction, occupied by the plaintiffs as a store, and containing a large assortment of goods. The north wall of this building was irregular in line and of poor construction, founded upon "rubble rock" thrown into a shallow trench

which had not been dug to firm ground. It was built directly over two old vaults for toilets and a cellar had been excavated with an almost perpendicular wall extended from the northwest end of the wall of the building east for from 35 to 40 feet. While there is no direct testimony to that effect, the inference is clear that this cellar "wall" was but the natural composition of the ground. This irregular wall of the building was at all points north of the common line between lots 11 and 12, varying from 5½ to 13 inches.

The architect's plans for the preliminary excavation give the width thereof as 58 feet, or the width of lots 10 and 11 on the original map and plat of the town site. On June 15 the realty company let a contract to Huddleston and Cook, expert excavators, for the excavation to be made in accordance with the plans prepared by the architect and attached thereto a copy of those plans. This contract required the contractors to furnish all necessary tools, labor, etc., and to deliver to the contractee a completed excavation by July 14. It left the method of excavating entirely to the contractors' judgment and provided for the payment of a lump sum therefor, but further provided for payment of seventy-five per cent of the value of the work done each week on Saturday of that week.

The realty company employed E. J. Strasburger, a competent engineer, to survey its lots and mark the lines of the excavation on the ground. In doing so, Strasburger, discovering the excess of 7½ inches in the block, allotted to these lots an additional inch and marked the width of the excavation as 58 feet and 1 inch.

The contractors commenced work on June 23, and the architect, representing the realty company, visited the ground at least once a day while work was in progress, but only for the purpose of observation in order to estimate the amount to be paid each week and to determine whether the work was progressing with sufficient expedition to insure its completion within the time mentioned in the contract.

On the day the work was commenced, the realty company served upon Hum Yow, by delivery to his wife in his absence from the city, the following written notice:

"Butte, Mont., June 23, 1922.
"Mr. Hum Yow, Butte, Mont.

"Dear Sir: This is to notify you, the owner of lot 12, block 41, original town site of Butte, Mont., that the Northwestern Realty Company is excavating for a basement on the property adjoining your above-named lot on the north. This excavation will go below the bottom of the north wall of your building. While all reasonable care will be taken in doing this excavating so as not to unreasonably jeopardize your wall, your particular attention is called to the very unsafe condition of the north wall of your building; and for your own protection you are cautioned to protect your wall.

"Respectfully yours,
"NORTHWESTERN REALTY CO.,
"By A. PINCUS,
"President.

"Served by the undersigned in the afternoon of June 23, 1922.

"HERMAN KEMNA."

Hum Yow did not see this notice until July 6 or 7, but on July 10 he entered into a contract with Jesse Huddleston, who, for a consideration named, agreed to "underpin and protect" the well from "settling, falling or caving in."

The plaintiffs, as tenants of Hum You, were not given notice of the proposed excavation, but had actual notice and knowledge thereof from the beginning and observed the progress of the work from day to day.

The contractors discontinued work on the south wall of the excavation about the 7th or 8th of July, in order to permit Hum Yow to protect his wall, and immediately on securing the contract for that purpose, Huddleston commenced removing portions of the ground intervening between the wall of the

excavation and the wall of the building and placing posts under the latter; but before he had completed the work the center third of the wall settled and toppled into the excavation, bringing the roof of the building with it, to the great damage of plaintiffs' stock of goods.

All experts called by plaintiffs and defendants testified that the composition of the subsoil of lots 11 and 12 was such that, in its natural state without the weight and lateral pressure of the building, the wall of the excavation would have stood and lot 12 would not have been affected by the excavation. Counsel for plaintiffs assert that, as there was some showing that portions of the other walls of the excavation caved to some extent, the jury was justified in finding against this testimony; but the evidence referred to was with reference particularly to points such as at the northeast corner of lot 11, where there had been a fill made with ashes prior to the construction of a cement walk, and did not contradict the testimony to the effect that the ground in its natural state would stand.

While there was testimony concerning a lead or vein of ore passing through the lots, there was no evidence that the wall of the excavation sloughed off on account thereof.

It must, of course, be conceded that the building fell by reason of the removal of the lateral and subjacent support thereof, and here again counsel for plaintiffs assert that there was a conflict in the evidence; but a careful examination of the record shows that there was no substantial conflict in the evidence.

Plaintiffs' contention is that the lateral and subjacent support was removed under the contract let for the excavation. The testimony on which they rely refers to the condition of the ground just prior to the catastrophe without reference to the nature of the work which brought about that condition. Thus Fanney and Joseph Neyman testified that, just prior to the time the building fell, the excavation extended up to, and at points under, the wall of the building, and was cut down to a per-

pendicular face, and that no work was done thereon after the building fell until they had cleared away the debris after they salvaged what they could of their stock, which act consumed some eight days or more, and in this latter statement they were corroborated by a friend of the family who assisted in the work of salvage.

Based on this testimony, one F. T. Morris, a civil engineer, testified to the making of a survey and examination on July 15, four days after the building fell, and that he then found the wall of the excavation perpendicular and cut up to the wall of the building, and therefore extending across the common line of lots 11 and 12 a distance of from $5\frac{1}{2}$ to 13 inches. This witness testified that, while he had to remove some dirt that had slid down from lot 12, his work was not interfered with by debris from the fallen building; the only part of which that he noticed was boards thrown out into the excavation.

W. B. Frame, an experienced builder, called for the plaintiffs, testified that he observed the progress of the work up to July 9, when he went to Helena. Stressing the fact that he was merely giving the best of his recollection, the witness stated that the excavation then extended close to the wall at the rear of the lot and about 11 inches from the wall at the front; that the embankment was perpendicular; and that 6 or 7 crosscuts had been extended under the wall; but he testified that work on the south wall of the embankment had ceased a day or so before he left for Helena.

Huddleston and Kemna, called as witnesses for plaintiffs, testified that, when work was stopped in order to give Hum Yow an opportunity to shore up his building, the wall of the excavation was at least 14 inches from the common line between the two lots, at the top, and inclined to from 3 to 4 feet from that line at the bottom. The work of shoring up or underpinning was not commenced until the 10th. Therefore it is clear that Frame's recollection was faulty, as he could not have seen the cuts under the wall prior to the 9th.

Defendants' witnesses testified that the debris from the fallen building was removed by workmen for plaintiffs within two days after the building fell and that the contractors then completed the trench for the south wall of the new building by removing the balance of the dirt from the excavation as called for by the plans. This wall, when completed, stood on the line of lot 11.

Now, photographs, taken immediately after the catastrophe and introduced in evidence by the plaintiffs, show a portion of the wall still standing, being about the rear third thereof, and that here, next this portion of the wall, the ground had not been removed up to the wall and did slope into the excavation forming a "toe," as explained by the witnesses Huddleston and Kemna in describing the entire south wall of the excavation when work was discontinued. It is further shown that, at the point where the wall broke, a right angle cut extended from the wall of the excavation to and under the wall of the building and therein was set a post. From that point on the face of the excavation was so buried in debris from the fallen wall that no observation could be made thereof.

It is then clear that the witnesses Joseph and Fanney Neyman were testifying concerning the condition existing after Huddleston had attempted to underpin the building under his contract with Hum Yow and that these witnesses were mistaken as to the time when the debris was removed, as Morris could not have performed his work with the debris in place, and he testified, in effect, that the debris had been removed before July 15, and thus corroborated witnesses for the defendants on this point, and it is further clear that he took the southern extremity of the work done by Huddleston under the Hum Yow contract as the south line of the realty company's excavation.

1. In support of the judgment, counsel for plaintiffs assert that, as no motion for a new trial was made, we may examine the evidence no further than to determine whether there is

any substantial evidence supporting the judgment and that, as the evidence is in conflict, the verdict cannot be disturbed, citing *Watts* v. *Billings Bench Water Assn.*, 78 Mont. 199, 253 Pac. 260, *Steven* v. *Potlatch Oil Co.*, 80 Mont. 239, 260 Pac. 119, and *Robinson* v. *Woolworth Co.*, 80 Mont. 431, 261 Pac. 253.

We need not here consider whether the rule announced in the cases cited is applicable where, as here, a motion for a direct verdict was made to the trial court, as there is, in fact, no substantial conflict in the evidence and the record contains no substantial evidence to support the theory that the excavation made under the realty company contract caused a caving of the soil from lot 12 and the falling of the Hum Yow wall.

It is clear from the testimony introduced on the part of the plaintiffs that work was suspended under the realty company contract before the wall of the excavation reached the line between lots 11 and 12, and thereafter the excavating, observed by witnesses for the plaintiffs, was extended up to and under the wall for the purpose of shoring up and underpinning the wall under the independent contract entered into between Hum You and Jesse Huddleston. All of the witnesses who testified to conditions differing from those described by Huddleston and Kemna were testifying to conditions existing at a later date and after the conditions were shown to have changed, and their testimony does not present a substantial conflict in the evidence.

It is true that the line projected by Strasburger as the extreme southern boundary of the excavation was one inch more than the official map and plat of the town site gave to lots 10 and 11, and, if the contractors excavated to this line and that one inch belonged to Hum Yow, there would have been trespass shown; but, as Hum Yow is not a plaintiff, even if this slight trespass was shown, which it was not, it would be important only in the event the evidence showed that the wall fell by reason of the excavation made under the realty company contract.

The appeals, therefore, raise but questions of law arising on practically undisputed testimony. Both the trustees and the contractors, by proper specifications of error, question the sufficiency of the evidence above summarized to support the verdict or the judgment, and assert that the court ·erred in overruling their motions for judgment of nonsuit and for a directed verdict.

2. It is first contended by the trustees that, regardless of whether negligence on the part of the contractors was shown,· the judgment against them is erroneous, for the reason that the work was done by independent contractors to whom the method of prosecuting the work was left.

An independent contractor is one who renders service in [1] the course of an occupation, and represents the will of his employer only as to the result of his work, and not as to the means whereby it is accomplished, and is usually paid by the job. (*Jensen* v. *Barbour*, 15 Mont. 582, 39 Pac. 906.) Here, Huddleston and Cook were independent contractors.

The general rule is that, where the relation of independent [2] contractor exists, and due diligence has been exercised in selecting a competent contractor, and the thing contracted to be done is not in itself a nuisance, nor will necessarily result in a nuisance if precautionary measures are used, and injury result, not from the fact that the work is done, but from the wrongful and negligent manner in which it is done by the contractor or his servants, the contractee is not liable therefor. (39 C. J. 1324, and notes; 14 R. C. L. 79.) There are, however, numerous exceptions to this rule, among them that indicated by the rule itself: That an employer may not divest himself of a primary duty he owes to his neighbor by contracting for the performance of work the necessary or probable result of which will be an injury to third persons. (*A. M. Holter Hardware Co.* v. *Western Mtg. Co.*, 51 Mont. 94, L. R. A. 1915F, 835, 149 Pac. 489; *Fagan* v. *Silver*, 57 Mont. 427, 188 Pac. 900.)

It is a close question as to whether, under the circumstances
[3] of this case, the rule of *respondeat superior* would apply;
but as both the contractors and the contractee are before the
court, for the reasons hereinafter stated, we need not now
determine the question.

3. Disregarding the fact that the work was not done directly
by the owners or under their direct supervision, the first ques-
tion presented is as to the duty of an owner, excavating on
his own land.

Every owner of land has a natural right to lateral and
[4] subjacent support for his land from that adjoining it,
and an adjoining owner cannot excavate his land in such
manner as to remove that support to the damage of his neigh-
bor without responding in damages for the injury done to his
neighbor's land. (1 R. C. L. 383, and cases there cited.)
This liability, however, extends only to injury to the land,
and not to injury to structures standing thereon (*Lasala* v.
*Holbrook*, 4 Paige (N. Y.), 169, 25 Am. Dec. 524; *Gilmore*
v. *Driscoll*, 122 Mass. 199, 23 Am. Rep. 312), as this natural
right does not extend to the support of any additional weight
or structure which the owner of the land may place or erect
thereon; and, if a building or other structure so erected or
placed upon one's land is injured or destroyed by excavations
made by an adjoining owner which are conducted lawfully
and with care, and which would not have caused the land itself,
in its natural condition, to have fallen or to have been injured,
the injury will be *damnum absque injuria* (note, 66 Am. Dec.
649; 1 C. J. 384, and cases cited). Some of the older deci-
sions have qualified this rule by the statement: "Unless he
[the owner of the lot in which the building rests] has ac-
quired such a servitude by grant or prescription." (*Charles*
v. *Rankin*, 22 Mo. 566, 66 Am. Dec. 642.)

Here, there is no suggestion of a grant, and the doctrine of
[5] right by prescription can be applied only where one
permits a condition to exist which he might have prevented

by timely action during the statutory period. (*Smith* v. *Duff*, 39 Mont. 374, 133 Am. St. Rep. 582, 102 Pac. 981.)

It is not the duty of the person making the excavation to [6] support the buildings of adjoining owners, but that duty rests upon such owners (*Winn* v. *Abeles*, 35 Kan. 85, 57 Am. Rep. 138, 10 Pac. 443; *Aston* v. *Nolan*, 63 Cal. 269; *McMillen* v. *Watt*, 27 Ohio St. 306); and, if the person making the excavation does so at his own expense, he cannot even recover from the owner of the building the amount necessarily expended for that purpose (*First Nat. Bank* v. *Villegia*, 92 Cal. 96, 28 Pac. 97).

True, an action will sometimes lie for injury to a building [7] caused by the excavating of an adjoining lot, but the gravamen of such an action is not simply the act of excavating, but that it was done in such a careless and improper manner that it occasioned the injury (*Moody* v. *McClelland*, 39 Ala. 45, 84 Am. Dec. 770); or that the excavator has removed the soil from the adjoining lot on which the building stands (*Gildersleeve* v. *Hammond*, 109 Mich. 431, 33 L. R. A. 46, 67 N. W. 519).

Counsel for plaintiffs, while acknowledging this rule, question its justice and propriety in this state under section 8743, Revised Codes 1921, which provides that one may not so use his rights as to infringe upon the rights of another. This statutory provision works both ways and the reason for the rule stated is found in the very declaration; i. e., one by altering the natural condition of his land which is entitled to lateral support, will not be permitted thereby to deprive the adjoining owner of his right to use his land in the manner in which it could have been used in its natural condition. (*Moody* v. *McClelland*, above.)

In *Lasala* v. *Holbrook*, above, the facts were similar to those in the present case, in that the building injured had stood for thirty-six years and the adjoining land owner was excavating far below its foundations. It had already begun to settle when the owners sought to enjoin further excavation.

Chancellor Walworth, after stating the rule regarding land in its natural state, said: "But my neighbor has the right to dig the pit upon his own land, if necessary to its convenient or beneficial use, when it can be done without injury to my land in its natural state. I cannot, therefore, deprive him of this right by erecting a building on my lot, the weight of which will cause my land to fall into the pit which he may dig in the proper and legitimate exercise of his previous right to improve his own lot."

This ancient rule is not abrogated, nor are the natural rights of the parties curtailed by section 6773, Revised Codes of 1921, which provides that "each coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjoining land, subject to the right of the owner of the adjoining land to make proper and usual excavations on the same for the purposes of construction, on using ordinary care and skill, and taking reasonable precautions to sustain the land of the other, and giving previous reasonable notice to the other of his intention to make such excavations." Indeed, the statute but declares the common-law rule. It refers only to "land," and adds thereto only the requirement that the party contemplating excavating his land shall give notice to the other in order that he may be afforded the opportunity for observing the method employed in excavating and protecting his burdens upon the land in its natural state, which the party excavating is not required to protect. (*First Nat. Bank* v. *Villegia,* above.)

4. Counsel for plaintiffs argue that the care and skill required by the statute must be commensurate with the danger involved in the work and that, as defendants knew of the condition of the Hum Yow north wall, they should have proceeded with the work in such manner as to protect that wall; that is, by excavating but a section of the ground at a time and completing the foundation wall in each section before removing further support from the adjoining lot. But such is not the duty of an owner excavating on his own ground

under the almost unanimous declarations of the courts of this country. While such a person does not relieve himself, by giving the statutory notice, of any portion of the prudent care with which he must conduct his operations in the absence of provision for notice, and, whether notice is required by law or not, his excavation must be such as would not have caused the soil of the adjoining land to fall into the excavation had that land been in its natural state, if he gives sufficient notice and then so conducts the work that the soil, without the weight of the building thereon, would not have fallen in, his whole duty is performed, and, in the absence of a violation of a duty, no liability for injury attaches. (*Aston* v. *Nolan,* above; *Weiss* v. *Kohlhagen,* 58 Or. 144, 113 Pac. 46.)

Plaintiffs' witness Frame testified only that the two methods [8] outlined by him, that contended for by plaintiffs and that adopted by defendants, were proper methods of excavating; the propriety of adopting one or the other depending upon circumstances and conditions found to exist at the point of excavation. As it clearly appears, even from the testimony adduced by plaintiffs, that the embankment would have stood in the natural state of the lots, without the building on lot 12, and that it did so stand after work was discontinued on the excavation and until the further support was taken from the wall under the Yum Yow contract, by removing the ground under the wall in place opposite the excavation for the cellar under the building, and that only that portion of the wall so weakened fell, while the rear portion of the wall, not undermined and not weakened by the cellar excavation, but where the ground was permitted to remain in the condition in which these defendants left it, did not fall, the plaintiffs signally failed in their proof of the acts of negligence charged.

5. Plaintiffs, however, assert that the defendants failed to [9, 10] comply with the requirements of the statute regarding notice, in that they gave no notice to these plaintiffs and that the notice given was not received by Hum Yow until thirteen or fourteen days after work was commenced on the

excavation, and declare that failure to observe the mandate of a statute designed to guard against injury to persons or property in itself constitutes negligence, citing *Knott* v. *Pepper,* 74 Mont. 236, 239 Pac. 1037, and *Marsh* v. *Ayers,* 80 Mont. 401, 260 Pac. 702.

Plaintiffs are correct as to the law: A failure to give the required notice may render the party making the excavation liable for injury to a structure standing on the adjoining lot, even though the lot in its natural condition would not have been affected, on the theory of negligently failing to give the owner of such building an opportunity to protect it. This liability is absolute at least as to those injuries which result prior to the time the adjoining owner obtains full knowledge of the conditions existing. (*Aston* v. *Nolan,* above; *Hickman* v. *Wellauer,* 169 Wis. 18, 171 N. W. 635.)

Section 2784, Compiled Laws of South Dakota, is identical with our section 6773. Considering the purpose of the notice as above stated, the supreme court of South Dakota said: "It will be observed that the manner of giving the notice specified in the section is not prescribed. Any notice, therefore, that brings to the knowledge of the other party that the coterminous owner intends to excavate his lot, and to erect a building thereon, in time to enable such party to make the needed preparation to protect his property, would seem to be sufficient." (*Novotny* v. *Danforth,* 9 S. D. 301, 68 N. W. 749.)

Here, the notice was served at the time, or on the day, work was commenced upon the excavation. In the absence of the opportunity to make personal service on Hum Yow, it was served in the manner best calculated to bring it to his attention and he received the notice personally within ample time to make all needed preparation for the safeguarding of his building. Out of an abundance of caution, defendants delayed work on the excavation to afford him an opportunity to do so, and, in fact, it was only while he was attempting to make his

building safe, and as a result of that attempt, that the wall fell.

The pronouncement in the South Dakota case, above, is reasonable, and, following it, we declare service of the notice as to Hum Yow was sufficient.

As to notice to plaintiffs, section 6773 deals only with "coterminous owners" and declares only that the one contemplating making an excavation on his land shall give notice "to the other"; no notice was therefore required to be given to occupants of the building.

Counsel argue further that the notice itself was insufficient [11] in substance and was misleading, in that it advised Hum Yow that "all reasonable care will be taken in doing this excavating so as not to unreasonably jeopardize your wall."

Defendants did not mislead Hum Yow, as they stopped work in order to afford him the opportunity for safeguarding the wall, a duty resting upon him and not upon them, and the notice given clearly served every purpose thereof as outlined above. A similar notice, not as strong as this one, was upheld in *Nippert* v. *Warneke*, 128 Cal. 501, 61 Pac. 96, 270, and we hold the present notice sufficient.

6. It might be thought, and there is some suggestion running [12] through counsel's argument to that effect, that, as the contractors for the realty company and for Hum Yow are one and the same and are before the court in this action, the judgment should stand as to them, or at least Huddleston who signed the contract with Hum Yow.

In *Novotny* v. *Danforth*, above, the facts are strikingly similar to those in the case at bar. There Danforth excavated for a building on his lot while one Valentine did the work as contractor. The excavation was below the foundation of Novotny's building on the adjoining lot, and Novotny contracted also with Valentine to protect his wall by building additional foundation thereunder. While Valentine was pro-

ceeding under the latter contract the building fell. Novotny sued Danforth and Valentine jointly, but the trial resulted in judgment for the defendants. On appeal plaintiff contended that the trial court erred in excluding evidence to the effect that the contractor was guilty of negligence in undermining the wall for the erection of the Novotny subfoundation. The court said: "The answer to this contention is that the action was not brought or the complaint framed upon any theory that Valentine, in the performance of his contract with the plaintiff, had caused the damage, but upon the theory that, in excavating for Danforth's foundation, he had caused the damage for which he and Danforth were liable. * * * It was negligently excavated land adjacent to the plaintiff's said land that plaintiff claims caused the injury, not negligently excavating under plaintiff's foundation, * * * so that the latter issue was not presented in this case, and could not properly be tried therein." Here, Huddleston's negligence, if any, in underpinning the Hum Yow wall, was not in issue and cannot be here determined.

The evidence, under the law as above declared, supports neither the verdict nor the judgment, and the motion for directed verdict, at least, should have been granted.

For the reasons stated, the judgment is reversed and the cause remanded to the district court of Silver Bow county, with direction to enter judgment in favor of the defendants.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.

Rehearing denied June 14, 1928.