A. M. HOLTER HARDWARE CO., Respondent, *v.* WEST-
ERN MORTGAGE & WARRANTY TITLE CO. et al.,
Appellants.

(No. 3,527.)

(Submitted May 10, 1915.   Decided June 7, 1915.)

[149 Pac. 489.]

*Real Property—Negligence—Independent Contractor—Concur-
ring Act of God—Liability of Owner.*

Real Property—Independent Contractor—Negligence—Liability of owner.
   1.   Where a contract was let for repairing the roof of a building with-
out imposing upon the contractor the duty of removing the waste
material, the owner became liable for damages caused by such material
being blown off against a neighboring structure.

   [As to liability for acts of independent contractor, see notes in 76
Am. St. Rep. 382; 65 L. R. A. 622.]

Same—Duty of Owner.
   2.   One who causes work to be done on a building, the installation of
which may probably result in creating a condition dangerous to the
person or property of others, must anticipate the probable consequences
and take such reasonable precautions as a careful and prudent man
would have taken under like circumstances.

   [As to land owner's liability for persons injured by dangerous prem-
ises, see note in 31 Am. St. Rep. 524.]

Same—Concurring Act of God—Liability.
   3.   Where pieces of iron, which had negligently been left on the roof
of defendant's building by the person doing repair work thereon, were
blown off and against a window in a neighboring building by a wind
which, though high, was not such as defendant should not have antici-
pated at that season of the year, defendant was liable for the resulting
damage, under the rule that where two causes contribute to an injury,
one of which is the negligence of the defendant and for the other of
which neither party is responsible, the defendant is liable if the injury
would not have occurred but for his negligence.

   [As to concurrent negligence of two or more persons resulting in
injury to a third person, see notes in 16 Am. St. Rep. 250; 17 L. R. A.
33.]

*Appeal from District Court, Lewis and Clark County; J.
Miller Smith, Judge.*

Action by A. M. Holter Hardware Company against the
Western Mortgage & Warranty Title Company and others.
Judgment for plaintiff and defendants appeal from it and an
order denying their motion for a new trial.   Affirmed.

Cause submitted on briefs of counsel.

*Mr. Massena Bullard,* for Appellants.

*Messrs. Wm. Wallace, Jr., John G. Brown* and *T. B. Weir,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

In this case the plaintiff had verdict and judgment. The defendants have appealed from the judgment and order denying their motion for a new trial.

The plaintiff owns a lot, with a building thereon, situate on the east side of Main Street in the city of Helena, and described as No. 113 North Main Street. The defendant Western Mortgage & Warranty Title Company owns a lot, with a building thereon six stories high, situate on the west side of the street opposite the property of the plaintiff, and known as the Granite Block. After reciting the foregoing, the complaint alleges: "That on or about the 6th day of December, 1912, the defendants did wrongfully and negligently cause and permit a large piece of galvanized iron, to wit, a piece of galvanized iron 28 inches wide and —— inches long, to be placed upon the roof of said Granite Block building without fastening or securing said piece of galvanized iron to said building in any manner, and negligently and carelessly allowed the same to thus remain at a great height above the said street and surrounding buildings, including the property of this plaintiff above referred to, notwithstanding the fact that the said defendants well knew, or in the exercise of ordinary care should have known, that the said piece of galvanized iron was likely to be blown and to fall to the said street below and upon and against the property and building of this plaintiff aforesaid; so that, and by reason of said negligence, said piece of galvanized iron did, on or about the 7th day of December, 1912, fall from the roof of said Granite Block building into said Main Street and against the aforesaid building, the property of this plaintiff, breaking and destroying the plate glass of a window therein to the damage of

plaintiff in the sum of $450.'' Judgment is demanded for $450 and costs. Before the trial the action was dismissed as to the defendant Groseclose. The joint answer of the other defendants, admitting that the window was broken at the time stated, denies all the allegations imputing negligence to them or either of them, and alleges that the window was broken by an act of God, *viz.*, an extraordinary windstorm. There was issue by reply.

The contentions made by the defendants are that the court erred in denying their motion for a nonsuit, and in submitting certain instructions to the jury.

There is no substantial conflict in the evidence, except as to the extraordinary character of the wind which occurred at the time of the accident. That introduced by the plaintiff may be epitomized as follows: Defendant Kleinschmidt was the manager of the defendant corporation and in personal charge of the Granite Block. The roof of the building is flat, with a slope toward the rear sufficient for drainage purposes. There is no substantial barrier to prevent a free sweep of the wind over the entire surface. About the middle of the roof and elevated above its surface is a skylight oblong in shape. Its roof pitches at an angle of forty-five degrees both at the side and ends. It had originally been covered with roofing glass. Some of the panes having been broken out by a previous storm, they had been replaced by pieces of galvanized sheet iron. The pieces of iron were of different sizes and weights. One of them, which the evidence shows was blown against the plaintiff's window, was twenty-four inches in width, between five and six feet in length, and weighed about six pounds. On December 5, 1912, two days before the accident, under a contract let to him by Kleinschmidt, Groseclose, one of the original defendants, a roofing contractor, began to repair the skylight by replacing the sheets of iron with glass. The contract was that Kleinschmidt should furnish the glass and Groseclose should install it for a lump sum of $35. Groseclose was not required by the terms of the contract to remove the debris when the repairs were completed.

The removal would involve additional labor and expense.    By 2 o'clock on the afternoon of December 6, the work had been completed, except some of the small triangular spaces along the hips of the roof and at their juncture with the ridge.    The workmen had experienced difficulty in cutting the glass to fit into these spaces without cracking it.    They covered them temporarily with uncut pieces and left them until they could ascertain from Kleinschmidt, who was then away from the building, whether they should attempt to fit glass into them or cover these spaces with tin.    The pieces of iron taken out they left lying loose upon the roof of the building.    The edges of them had been folded in order to fit them into the frames of the skylight, with the result that they did not lie flat on the roof, and for that reason could readily be caught up and carried away by the wind.    A day or two later the workmen returned and completed the work.    The building is ninety-six feet high.    Main Street is sixty feet wide and extends from the north to the south.    The repairs were contracted for, and were undertaken at the season of the year when high winds are frequent, the testimony showing that during the month of December for twenty years winds of a velocity of forty miles an hour and higher had not been unusual, and that the general direction of them had been from west to east.    The damage necessitating repairs upon the skylight had been caused by a windstorm which had attained a velocity of seventy miles per hour.    For the two hours between 1 and 3 o'clock on the morning of December 7, during which the plaintiff's window was broken, the wind attained a velocity of thirty-seven miles.    The debris left upon the roof, including the sheet iron, had value, and belonged to the defendant corporation.    No precaution was taken to prevent it from being blown off.    Kleinschmidt, being heavy and somewhat advanced in years, did not go upon the roof during the progress of the repairs, but depended upon one Teeters, employed as janitor of the building, to see that the work was properly done.    Teeters was there frequently, and upon his rep-

resentation to Kleinschmidt that the repairs had been completed according to the contract Kleinschmidt paid the contract price.

Counsel for defendants contends that the evidence does not show that Teeters was the agent of the defendant corporation, or had any authority to represent it for any purpose. We cannot perceive the pertinency of this contention. It does not aid in any way the solution of the question whether the corporation and Kleinschmidt, its manager and admittedly responsible agent, were guilty of culpable negligence as charged in the complaint. It is not controverted that they were unless the evidence justifies the conclusion that the accident was caused exclusively by the negligence of Groseclose, who, it is insisted, was an independent contractor and solely responsible, or was attributable to an unusually high wind, the occurrence of which could not reasonably have been anticipated. In view of this concession it is wholly immaterial to inquire what the relation of Teeters to the corporation was, or to consider what was the scope of his authority.

The contention that Groseclose was solely responsible upon the [1, 2] theory that he was an independent contractor and created the condition which resulted in the accident, is without merit for two reasons: In the first place, the contract did not impose upon him the duty to remove the debris from the skylight, or to leave the building in a safe condition. By not imposing this duty upon him, Kleinschmidt, the manager, became responsible for the performance of it. Negligence in this behalf was chargeable to him and the corporation. In the second place, the corporation, the owner of the property, in arranging to have repairs done upon it, the installment of which would probably result in creating a condition dangerous to neighboring property owners, was under obligation to provide that reasonable care should be taken to obviate the probable consequences. As was pointed out in *Railroad Co.* v. *Morey,* 47 Ohio St. 207, 7 L. R. A. 701, 24 N. E. 269, a proprietor's liability "is based upon the principle that he cannot set in operation causes dangerous to the person or property of others, without taking all reasonable precautions to anticipate, obviate and prevent

these probable consequences.'' Under this rule, an employer may not devest himself of the primary duty he owes to other members of the community by contracting with others for the performance of work, the necessary or probable result of which is injury to third persons.   Other courts have stated the rule in substantially the same terms.   (*Davie* v. *Levy & Sons,* 39 La. Ann. 551, 4 Am. St. Rep. 225, 2 South. 395; *Wertheimer* v. *Saunders,* 95 Wis. 573, 37 L. R. A. 146, 70 N. W. 824; *Glickauf* v. *Maurer,* 75 Ill. 289, 20 Am. Rep. 238; *Northern Trust Co.* v. *Palmer,* 70 Ill. App. 93; *Teepen* v. *Taylor,* 141 Mo. App. 282, 124 S. W. 1062; see, also, Thompson on Negligence sec. 648.)   Every person ''must so use his own rights as not to infringe upon the rights of another'' (Rev. Codes, sec. 6182); the standard by which his duty is measured being what a careful and prudent man would have done under like circumstances (*Teepen* v. *Taylor, supra*).   It may be conceded, for the sake of argument, that Groseclose was impliedly bound by his contract to clear away the debris; yet, under the rule announced in the cases *supra,* this cannot relieve the defendants.

It is argued that the breaking of the window was caused by [3]   an unprecedentedly high wind—an act of God—and hence that the defendants are not liable.   It is true the wind blew the sheet iron from the roof and broke the window; yet there was evidence that winds of the same power and velocity are not unusual at the season of the year at which the work was done.   This made a case for the jury, and they were justified in finding that though the one which was the occasion of the accident was severe, it was not such as the defendants, in the exercise of prudence and care, ought not to have anticipated.   This being so, the defendants were convicted of negligence in failing to anticipate and guard against the probable consequences, under the well-recognized rule that where two causes contribute to an injury, one of which is the negligence of the defendant and for the other of which neither party is responsible, the defendant is liable, if the injury would not have occurred but for his negligence.   (*Mize* v. *Rocky Mt. Bell Telephone Co.,* 38

Mont. 521, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189, 100 Pac. 971; *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70; *Lyon* v. *Chicago, M. & St. P. Ry. Co.,* 45 Mont. 33, 121 Pac. 886.) As the last two citations show, the rule is applicable to cases in which one of the contributing causes is an act of God, the prior, co-incident or subsequent negligent act of the defendant being *causa sine qua non.*

Several of the assignments allege error in particular instructions; but beyond a general statement in counsel's brief that they cast too great a burden upon the defendants, none of them are discussed. We have made such examination of them, in connection with the others submitted, as we have been able without the aid of argument, and are of the opinion that the charge as a whole fully covers the case as made by the pleadings and the evidence, and that it was as fair to defendants as they could demand. Under the circumstances we do not deem it incumbent upon us to take up the particular paragraphs *seriatim* and examine them.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.