IGNASZAK *v.* McCRAY REFRIGERATOR CO.

1. NEGLIGENCE—CONCURRENT ACTION OF WIND  DOES NOT RELIEVE FROM NEGLIGENCE.

If defendant placed a heavy section of an ice box on the sidewalk leaning against a building in such an insecure manner that the wind, which was not of unusual velocity and was not such as defendant might not have anticipated, caused it to fall upon plaintiff's decedent, a 4-year old boy, injuring him so severely that his death resulted, defendant is not relieved of liability for his negligence because the wind, for which neither party was responsible, contributed to cause the injury.

2. EVIDENCE—VELOCITY OF WIND IN ADJACENT CITY COMPETENT.

Testimony by a government meteorologist from original records made under his supervision and according to law as to the velocity of the wind about the time of the accident sued on, admissible under 3 Comp. Laws 1915, § 12522, was not rendered inadmissible by the fact that the observations were made from the top of a building in an adjacent city, but such fact affects the weight to be given it.

3. NEGLIGENCE—EVIDENCE—GREAT WEIGHT OF EVIDENCE.

Verdict in favor of plaintiff, *held*, not against the great weight of the evidence.

4. DAMAGES—DEATH—SURVIVAL ACT—PAIN AND SUFFERING — EXCESSIVE VERDICT.

In an action under the survival act for damages for the negligent death of a 4-year old boy, a verdict for $8,000, *held*, excessive and reduced to $5,000, notwithstanding there was evidence sufficient to sustain damages for pain and suffering.

Error to Wayne; Shepherd (Frank), J., presiding. Submitted October 19, 1922. (Docket No. 134.) Decided December 5, 1922.

On liability for injuries from matter precipitated upon adjoining property, see note in 36 L. R. A. (N. S.) 1171.

On excessiveness of damages in actions for personal injuries resulting in death, see note in L. R. A. 1916C, 870.

Case by Stanley Ignaszak, administrator of the estate of Raymond Ignaszak, deceased, against the McCray Refrigerator Company and others for the negligent killing of plaintiff's decedent.    Judgment for plaintiff.    Defendant company brings error.    Affirmed, conditionally.

*S. Homer Ferguson* and *Vincent M. Brennan,* for appellant.

*Dohany & Dohany,* for appellee.

CLARK, J.    Defendant McCray Refrigerator Company was installing, as an independent contractor, an ice box in the store of defendants Joseph Jendrek and Anna Jendrek in Hamtramck.    Defendant Golinske was a truckman who delivered the sections of the ice box at the store.    A foreman of the refrigerator company had charge of the unloading of the sections and directed other of its employees in that regard. Before the ice box could be installed an old ice box had to be taken out.    Some of the sections were unloaded from the truck to be left temporarily without the store.    The store building proper was 12 or 14 inches from the sidewalk.    It was on the south side of the street.    West of it was a vacant lot.    Between the show windows of the building and its westerly limit was a cornice about 6 inches in width.    One of the sections as crated was 8 feet long, 7 feet wide, about 6 inches thick and weighed about 700 pounds. This section was placed leaning against the cornice. As placed it had a base of 8 feet and altitude of 7 feet.    Being inclined only the inner edge of its base rested upon the sidewalk.    The extent of the incline is disputed.    There was testimony that the inner edge of the base was 28 inches from the store and other testimony from which it might be inferred that it was at or near the inner margin of the sidewalk,

or about 12 or 14 inches from the store. The section extended east of the cornice and in front of the store window about 4 feet and west of the cornice and along and in front of the vacant lot about 4 feet. The lower part of the section was heavier than the upper part. The foreman testified that the wind at the time, about 10:30 a. m., was from the south, "it blew hard at times and then it didn't," and that he did not think of the wind when he placed the section in the manner indicated. Norman B. Conger, meteorologist in charge of the local office of the U. S. Department of Agriculture, Detroit, and custodian of its records, testified from original records made under his supervision and according to law that the velocities of the wind during the forenoon of that day were as follows: 8 to 9 o'clock southwest 17 miles, 9 to 10 o'clock southwest 20 miles, 10 to 11 o'clock southwest 23 miles, maximum velocity of 29 miles at 10:42, and 11 to 12 o'clock southwest 27, maximum velocity of 31 miles at 11:38. He said such wind is regarded as fresh and that it is frequent. The weather observations were made from the top of the Majestic building in Detroit. Judicial notice was taken of the proximity of Hamtramck. There was a lengthy cross-examination respecting probable interruptions and deflections of the wind by buildings and their probable effect upon the direction and velocity of wind in adjacent streets and open places.

About 10:45 or 11 o'clock two little boys were coming into the store, of which Mrs. Jendrek testified:

"They were coming to the store and I said: 'You will turn back because they are moving the ice-box, and you can not come in' and the little boys then turned around and went away from the door. I saw the crate falling. It fell down quickly. It fell out towards the sidewalk, and the two little boys were just crossing, they were walking on the sidewalk when this crate fell.

"*Q.* Was there any other boy or person near the crate when it started to fall?

"*A.* No. It fell on them. * * * After it fell it wholly covered the width of the sidewalk from the inner edge to the outer edge."

And the foreman testified:

"I was guiding the old box that we were taking out. It was on rollers. When we were doing that I heard a noise which attracted my attention. The noise was on the sidewalk. I immediately looked around to see what it was as soon as I heard the noise. * * * I went right out to the door as soon as I heard the fall. There was no one right close to it. We immediately took the section up. The piece was large enough to completely cover the sidewalk when it fell.

"*Q.* Just as you turned your head after you heard the noise, did you see anybody?

"*A.* Yes, sir.

"*Q.* And the people or children that you saw were out in the streets?

"*A.* Yes, sir.

"*Q.* Nowhere near this crate? I mean by that, I don't mean a mile away, but they were nowhere near this crate?

"*A.* They were not to my knowledge."

Plaintiff's intestate was one of the boys mentioned by Mrs. Jendrek. He was a little over 4 years of age. The section fell on him. He was fatally injured. When the section was removed his mother carried him home. There was testimony that he survived about one hour thereafter and that he suffered pain. The declaration was under the survival act. A verdict was directed in favor of the Jendreks. There was verdict and judgment against the refrigerator company in the sum of $8,000 and it brings error. It is urged:

1. That a verdict should have been directed for appellant, there being no evidence of any negligence on its part. No one was near the section when it started to fall. The little boys were walking on the sidewalk

at the time.    The only theory of its falling is that advanced by plaintiff, that by defendant's negligence it was left standing on the public sidewalk so nearly balanced that it could not withstand the wind crossing the vacant lot and striking its exposed surface.    There was nothing unusual about the wind.    It was of increasing velocity that forenoon.    It was at times gusty.    It was not such a wind as defendant might not have anticipated.    If, as claimed by plaintiff, defendant placed the section upon a public sidewalk in such an insecure manner that it ought to have anticipated that it might be blown down by a wind, not unusual, defendant would be negligent, and that is true although the wind, for which neither party was responsible, contributed to cause the injury.

It is said in *Detzur* v. *Stroh Brewing Co.*, 119 Mich. 282 (44 L. R. A. 500), quoting from syllabus:

"An owner's negligence in maintaining a window above a public street in such a shattered condition as to render it likely to fall and injure pedestrians is the proximate cause of an accident so occurring, although an ordinary wind may operate as a concurring circumstance to dislodge the glass."

We quote from the syllabus of *Holter Hardware Co.* v. *Mortgage, etc., Title Co.*, 10 N. C. C. A. 316 (51 Mont. 94, 149 Pac. 489) :

"Where repairs had been made to a skylight on the roof of defendant's building, and pieces of iron left thereon were blown by a high wind against a plate glass window in plaintiff's building, and it was shown that winds of the same power and velocity were not unusual at that season and place, a finding that the wind, though severe, was not such as defendant ought not to have anticipated was justified, and defendant was liable for negligence under the rule that where two causes contribute to an injury, one of which is the negligence of defendant, and the other for which neither party is responsible, defendant is liable if the injury would not have occurred but for his negligence,

and such rule is applicable in cases where one of the contributing causes is an act of God."

And from syllabus of *Jaworski* v. *Detroit Edison Co.,* 210 Mich. 317:

"If a person does an act and knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligent, and will be deemed to be the proximate cause of the injury."

And from Baldwin on Personal Injuries (2d Ed.), p. 398:

"While it is true that the mere fact of an accident does not, standing alone, tend to prove negligence, yet the fact that an accident has occurred may be taken into consideration, with all of the other facts and circumstances of the case, for the purpose of determining whether in fact there was negligence.   The circumstances attending an accident, when shown, may of themselves in connection with the accident, afford an inference of negligence.·  If reasonable and legitimate inferences of negligence may be drawn from the accident and the attending circumstances, in the light of the testimony· in the case, such inferences are then for the jury to decide."

See, also, *Jacobs* v. *Hagenbeck-Wallace Shows,* 198 Mich. 73 (L. R. A. 1918A, 504, 16 N. C. C. A. 535); 20 L. R. A. (N. S.) 95; *Burghardt* v. *Railway,* 206 Mich. 545 (5 A. L. R. 1333); *Gerstler* v. *Weinberg,* 160 Mich. 267; *Butler* v. *Watson,* 193 Mich. 322; *Morrison* v. *City of Ironwood,* 189 Mich. 117; *Wilmarth* v. *Traction Co.,* 198 Mich. 428.   The evidence adduced by plaintiff in support of his theory and claim of negligence made a case for the jury.

2. That Mr. Conger's testimony was incompetent. That the observations were made from the top of the Majestic building in Detroit rather than on the spot

in adjacent Hamtramck affects the weight to be given the evidence, but does not render it incompetent. 22 C. J. p. 192. The evidence was competent. 3 Comp. Laws 1915, § 12522; *De Armond* v. *Neasmith*, 32 Mich. 231.

3. That the motion for a new trial should have been granted because the verdict is against the great weight of the evidence and because it is excessive. We fully agree with the trial court that the verdict is not against the great weight of the evidence. The trial court, expressing doubt respecting the testimony of conscious pain and suffering, declined to hold the verdict excessive, but recommended, in case no reversible error be found by this court, that the plaintiff be required to remit down to $5,000 as a condition of affirmance. We have no means of knowing what, if any, portion of the verdict was for pain and suffering. But there was evidence sufficient to sustain a verdict therefor, though the case under the evidence is rather near the border line between the death act and the survival act.

In L. R. A. 1916C, 870, will be found a list of verdicts in like cases. A review of such cases as are in point will indicate that the verdict in the case at bar is above the average as sustained. For circumstances under which verdicts may be held to be excessive, see *Fishleigh* v. *Railway*, 205 Mich. 145; *Wilson* v. *Railway*, 208 Mich. 411. Under the rules there laid down we think the amount of the verdict itself, under the proofs, indicates that it is excessive. For a case in point in which this question was considered and in which a verdict of $6,500 was reduced to $5,000, see *Swaczyk* v. *Detroit Edison Co.*, 207 Mich. 494, and see *Love* v. *Railroad Co.*, 170 Mich. 1.

A great many other assignments are argued by counsel. We have considered them. Taken separately or collectively they do not warrant reversal.

If plaintiff concedes by remission a reduction of the verdict to $5,000 the judgment will stand affirmed, with costs to defendant, otherwise the same will be reversed, with costs to defendant, and a new trial granted.

FELLOWS, C. J., and WIEST, McDONALD, BIRD, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.