SHOPE, Appellant, *v.* CITY OF BILLINGS, Respondent.

(No. 6,463.)

(Submitted May 24, 1929. Decided June 21, 1929.)

[278 Pac. 826.]

*Mr. Benjamin P. Harwood,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Guy C. Derry* and *Mr. M. J. Lamb*, for Respondent, submitted a brief; *Mr. Lamb* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Plaintiff sued defendant for injuries sustained through defendant's negligence in permitting an obstruction to exist in one of the city streets, as he alleged.

It appears that the defendant desired to move a large metal oil-tank across the city and to erect it upon the premises of the Russell Oil Company. Mr. Burnstead, chairman of the street and alley committee, in the presence of Mr. Todd, street commissioner, engaged William Kappie to move and erect the tank. Kappie, under a permit from the city, having given bond as required, followed the calling of moving houses, tanks, boilers and the like and possesssed the equipment adapted to such work. In the instant case Kappie agreed to move and erect the tank for $75, with the understanding that the city should loan to him a tractor and two men to assist. The tank was moved to the designated spot without incident. In moving it five men were employed, two being city employees.

In order to put the tank in place Kappie erected a gin-pole, using guys to hold it in perpendicular position. The guys, half-inch metal cables, were attached to the gin-pole, running one east, one south, one west and one north. The easterly cable was anchored to a "dead man," the southerly one to a pole, the westerly one to a boiler, and the northerly one, 250 feet long, was carried across the street and fastened to a light-pole. The cable was fastened so high upon the light-pole that Kappie thought it unnecessary to guard the place.

In the meantime the spot upon which the tank was to rest had been leveled off. Todd, present a few moments before Kappie commenced to erect the tank, suggested that Kappie

needed another man, to which Kappie answered, yes, he could use another man, and Todd said: "I will leave Herbert here," which he did. Then Todd went away. Kappie made use of pulleys and cables with the motive power of the tractor to place the tank in an upright position. When an attempt was made to lift the tank into place, it was found that the southerly cable was in the way, and would not let the tank rise. "So," as Kappie said, "we had to move it about twenty feet to the east to permit the tank to come up on end."

When the southerly guy was loosened it permitted the northerly one to sag. Just then the plaintiff, accompanied by his wife and three children, was coming along the street in an automobile at a moderate rate of speed. Without thought of danger, and being unable to see the sagging cable, which was of a leaden color, plaintiff drove his car against it and as a result of the collision suffered severe injuries. His wife and children were also injured and the car was damaged. Having presented his claims to the city, which were rejected, the plaintiff brought this suit.

After hearing all of the evidence, the court directed the jury to find for the defendant. The trial judge was of the opinion that upon the evidence Kappie was an independent contractor and under the circumstances the city was not liable for the accident. The court was right.

As was observed in *Jensen* v. *Barbour*, 15 Mont. 582, 39 Pac. 906, "to draw the distinction between independent contractors and servants is often difficult; and the rules which courts have undertaken to lay down on this subject are not always simple of application." Mr. Justice DeWitt, who wrote the opinion, seems to have favored the rule stated in *Bibbs Admr.* v. *Norfolk & W. R. R. Co.*, 87 Va. 711, 14 S. E. 163: "An independent contractor is one who renders service in the course of an occupation, and represents the will of his employer only as the result of his work, and not as to the means whereby it is accomplished, and is usually paid for the job." (And see *Neyman* v. *Pincus*, 82 Mont. 467, 267 Pac. 805.)

It is said in 14 R. C. L. 67, that according to the definition substantially adopted by many courts, with some variations in

language, an independent contractor is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subjected to the control of his employer except as to the result of his work. (And see Cooley on Torts, 3d ed., 1098.)

The use of the word "result" in these definitions, and the reasoning employed by Mr. Justice DeWitt in *Jensen* v. *Barbour* with respect to its use in this connection, are criticised in the note appended to *Westover* v. *Hoover*, 19 A. L. R. 215; see page 234. Its use was avoided in *Allen* v. *Bear Creek Coal Co.*, 34 Mont. 269, 115 Pac. 673, where this court said: "The relation of the parties under a contract of employment is determined by an answer to the question: Does the employee in doing the work submit himself to the direction of the employer, both as to the details of it and the means by which it is accomplished? If he does, he is a servant, and not an independent contractor. If, on the other hand, the employee has contracted to do a piece of work, furnishing his own means and executing it according to his own ideas, in pursuance of a plan previously given him by the employer, without being subject to the orders of the latter as to detail, he is an independent contractor. (1 Shearman & Redfield on Negligence, secs. 164, 165; *Poor* v. *Madison River Power Co.*, 38 Mont. 341, 99 Pac. 947; *Jensen* v. *Barbour*, 15 Mont. 582, 39 Pac. 906.)" But the last quoted language goes beyond the essentials of a general definition. (19 A. L. R., note, pp. 234, 235.)

The vital test in determining whether a person employed to do a certain piece of work is a contractor or a mere servant, is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer he is a servant; if not under such control, he is an independent contractor. (14 R. C. L. 67.)

One who contracts to do a certain piece of work according to his own methods and without subjection to the control of his employer, is, while so engaged, an independent contractor. (*Alexander* v. *R. A. Sherman's Sons Co.*, 86 Conn. 292, 85 Atl. 514; Jaggard on Torts, sec. 79.)

As to control, it is necessarily implied in every contract that the employer may insist that the contract shall be performed according to its specifications. (14 R. C. L. 68.)

After an exhaustive analysis of the authorities the author of the note in 19 A. L. R. suggests "the following brief and simple formula which, as regards its essential features, is mainly supported by the authorities, is sufficient for the purposes of a general definition," and at the same time, he says, is more accurate than most of those discussed in the note: "An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed." This definition, in the main, is in harmony with what is said in *Allen* v. *Bear Creek Coal Co.*, supra, and we agree that as a general definition it is sufficient.

Under either of the foregoing definitions Kappie was an independent contractor. The relation of master and servant did not exist between him and the city. According to the evidence he entered into an express contract to transport the tank and to erect it for a certain sum of money. "An express contract to pay by the job is always strong evidence that the relation of master and servant does not exist." (Shearman & Redfield on Negligence, 6th ed., sec. 165.) Kappie furnished the trucks for moving the tank and all other machinery and equipment, including the gin-pole, cables and pulleys, for erecting it, except only the tractor which he borrowed from the city. He moved the tank and placed it on the ground on the spot designated by the oil company after his own fashion. The method of erecting the tank was Kappie's and the details of the work were wholly within his control. The men employed while doing the work were under Kappie's exclusive direction and control. He gave the orders and they obeyed. The men assigned to help Kappie were instructed by Todd to do as Kappie said. Todd did not give any instructions as to what the city men should do or how they should do it. He had nothing to do with placing the gin-pole or stringing the cables or placing the tank in position. It does not appear that

he ever saw the northerly cable. In short, Kappie executed a special contract in his own way independent of any direction or control on part of the city. Clearly he was an independent contractor.

It makes no difference that he was furnished the city tractor and three city employees. These were merely instrumentalities employed by him in fulfilling his contract. (Compare *Westover* v. *Hoover*, 88 Neb. 201, 19 A. L. R. 215, 129 N. W. 285.)

It does not appear that it was necessary for Kappie to anchor the cable across the street. In doing so and permitting another cable to be loosened he made the street at that point a place of peril to the traveler who had the right to presume that the street was in an ordinarily safe condition. (*McCabe* v. *City of Butte*, 46 Mont. 65, 125 Pac. 133; *Irving* v. *Stevensville*, 51 Mont. 44, 149 Pac. 483.) But nothing appears to indicate that the city authorities knew Kappie intended to stretch the cable across the street, nor that he had done so until after the accident occurred. The work Kappie agreed to do did not contemplate the use of the street except for the conveyance of the tank and that was accomplished safely.

The law is that where the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the employer is not liable. (*St. Paul Water Co.* v. *Ware*, 16 Wall. (U. S.) 566, 21 L. Ed. 485; 43 C. J. 946.)

But the rule that the municipality is not liable for the negligence or wrongful acts of a contractor in the execution of the work agreed to be performed "does not apply where the contract directly requires the performance of a work intrinsically dangerous, however skillfully performed. In such a case, the party authorizing the work is justly regarded as the author of the mischief resulting from it, whether he does the work himself or lets it out by contract." (4 Dillon on Municipal Corporations, 5th ed., sec. 1722; 43 C. J. 947.)

"Where the work contracted for necessarily constitutes an obstruction or defect in the street of such a nature as to

render it unsafe or dangerous for the purposes of public travel, unless properly guarded or protected, the employer (equally with the contractor), where the injury results directly from the acts which the contractor engaged to perform, is liable therefor to the injured party. But the employer is not liable where the obstruction or defect in the street causing the injury is wholly collateral to the contract-work and entirely the result of the negligence or wrongful acts of the contractor, sub-contractor, or his servants. In such a case the immediate author of the injury is alone liable.'' (Id., 1723; 43 C. J. 950, 951; *Wilson* v. *City of Wheeling*, 19 W. Va. 323, 42 Am. Rep. 780; *Birmingham* v. *McCary*, 84 Ala. 469, 4 South. 630.)

As the city was not shown to be negligent in any way the action of the court in directing a verdict in its favor was correct and the judgment must be, and is, affirmed.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.

Rehearing denied July 5, 1929.