No. 85-42

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

DAVID L. KEMP,

        Plaintiff and Appellant,

   -vs-

BECHTEL CONSTRUCTION COMPANY;
BECHTEL POWER CORPORATION; CHRISTIAN
SPRING, SIELBACH AND ASSOCIATES,
a corporation, et al.

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable A. B. Martin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kelly & Halverson, P.C.; Billings, Montana
        Patrick Prindle argued

    For Respondents:

        Anderson, Brown, Gerbase, Cebull & Jones; James L.
        Jones argued for Bechtel & Montana Power, Billings,
        Montana
        Crowley, Haughey, Hanson, Toole & Dietrich; William
        O. Bronson argued for Christian, Spring, Sielbach &
        Associates, Billings, Montana
        Sidney R. Thomas, Billings, Montana

---

        Submitted:   January 23, 1986

        Decided:   June 6, 1986

Filed: **JUN 6 - 1986**

*Ethel M. Harrison*

---
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is an appeal from District Court's granting of summary judgment in favor of defendants in a personal injury case. Christian, Spring, Sielbach & Associates (Christian) have litigated this matter separate from the other defendants. Bechtel Construction Company was dismissed from the lawsuit by stipulation. Bechtel Power Corporation, Montana Power Company, Puget Sound Power and Light Company, Portland General Electric Company, Washington Water Power Company and Pacific Power and Light Company have litigated this matter together as one party which will be referred to collectively as "companies" except where the individual dealings of the entities are important.

We affirm the District Court on all issues.

The significant issue involving the companies is whether the companies, as general contractor and owner, had a nondelegable or reserved duty rendering them liable to an employee of a subcontractor. The issue we considered involving Christian is whether Christian's status as project engineer encompassed a duty of safety to the other subcontractors. If there was no duty owed or breached, there can be no issues of material fact and granting of summary judgment was appropriate. Rennick v. Hoover (1980), 186 Mont. 167, 170, 606 P.2d 1079, 1081; see also Scott v. Robson (1979), 182 Mont. 528, 597 P.2d 1150.

The relevant facts concern the contractual arrangement of parties on a construction project and the details of a trenching accident. The contractual arrangements are prescribed by Bechtel's contract with Montana Power Company (MPC), Christian's contract with MPC, and COP Construction Company's (COP) contract with Bechtel. Bechtel contracted

2

with MPC for development and expansion of a townsite on some of MPC's property at Colstrip, Montana. Christian was employed by MPC as project engineer. COP subsequently subcontracted with Bechtel for work which included putting in a sewer line for the townsite.

No provision in the contract between MPC and Bechtel addresses safety. Section GC-25 of COP's contract with Bechtel sets out these parties' safety duties:

GC-25    SAFETY

Subcontractor shall at all times conduct all operations under the Subcontract in a manner to avoid the risk of bodily harm to persons or risk of damage to any property. Subcontractor shall promptly take all precautions which are necessary and adequate against any conditions which involve a risk of bodily harm to persons or a risk of damage to any property. Subcontractor shall continuously inspect all work, materials and equipment to discover and determine any such conditions and shall be solely responsible for discovery, determination and correction of any such conditions.

Contractor will establish a Project Safety Program. Subcontractor shall comply with all applicable laws, regulations and standards and the Project Safety Program. Subcontractor shall coordinate with other subcontractors on safety matters and shall promptly comply with any specific safety instructions or directions given to Subcontractor by Contractor.

Subcontractor shall submit written Safety Program, with detail commensurate with the work to be performed, for Contractor's review. Such review and approval shall not relieve Subcontractor of its responsibility for Safety, nor shall such approval be construed as limiting in any manner Subcontractor's obligation to undertake any action which may be necessary or required to establish and maintain safe working conditions at the site.

Subcontractor shall appoint a qualified Safety Representative who, unless otherwise provided herein, shall have no other duties. Such Safety Representative shall attend all project Safety

3

> meetings and participate fully in all
> activities outlined in the Project
> Safety Program.
>
> Subcontractor shall maintain accurate
> accident and injury reports and shall
> furnish Contractor a monthly summary of
> injuries and manhours lost due to
> injuries.
>
> Subcontractor shall hold regular sched-
> uled meetings to instruct its personnel
> on Safety practices and the requirements
> of the Project Safety Program. Subcon-
> tractor shall furnish Safety equipment
> and enforce the use of such equipment by
> its employees.

Provisions 2.h. and 2.i. in the contract between Christian and Bechtel set out Christian's responsibilities during the construction phase of the project:

> (2.h.) surveying and staking of
> construction layout; and
>
> (2.i.) administration, coordination,
> observation and inspection of construc-
> tion for the purposes of quality assur-
> ance and cost monitoring with the
> obligation of promptly informing the
> Owner [MPC] of all failures on the part
> of construction contractors to perform
> work in accordance with applicable plans
> and specifications or to accomplish work
> in accordance with contract schedules,
> as well as informing the Owner of
> apparent conflicts or omissions in the
> plans and specifications as they are
> discovered in the course of a
> contractor's work.

No provision in this contract addresses safety.

Plaintiff was employed by COP as a laborer at the Colstrip project on November 21, 1979. He was working with Ron Nikula, a backhoe operator, digging a ditch for placement of a sewer line for a trailer court. The ditch was dug in an area that had been previously trenched for other purposes. COP personnel supervised the operations. Nikula was digging the ditch with a backhoe. Kemp followed the backhoe with a shovel, cleaning the bottom of the ditch and checking to see that the ditch was being dug on grade. To check the grade,

4

Kemp compared the level of a mark on his shovel handle with a laser beam set by a COP supervisor. There were also stakes set at regular intervals along the ditch with specifications by which the diggers could double check the laser.

Kemp and Nikula began digging about 8:30 a.m. They had dug 150 to 200 feet of 4½-foot-deep ditch over flat ground when the grade of the terrain began to rise abruptly. The plans specified a ditch that never exceeded 4½-feet-deep. However, no one from COP had changed the setting of the laser to adjust for the changing terrain as was their responsibility. The diggers continued to follow the laser so the trench deepened rapidly. By 10:30 a.m. the trench had been dug another 50 to 75 feet in length and was 9-feet deep. During this time the diggers realized that the trench was becoming dangerously deep. They also knew that a trench box (a "cage" that is put in trenches to protect digger from cave-ins) was available on the job site. However, they chose to continue digging without the trench box.

In the meantime, Nikula back-tracked over a portion of the ditch to dig it deeper to conform with the laser guide. Nikula believes this back-tracking may have fractured the dirt and contributed to the eventual cave-in. At the point where the backhoe had back-tracked, the dirt caved in, burying Kemp to his neck and causing the injury upon which this action is based.

Plaintiff sued the companies and Christian. Discovery was commenced by all the parties. The companies filed a motion for summary judgment in May 1984. Appellant filed a brief in opposition to the companies' motion. Christian filed its motion for summary judgment in September 1984. No briefs or affidavits in opposition to Christian's motion were filed. The District Court granted both motions for summary

judgment without hearing in December 1984, and this appeal ensued.

Appellant contends the companies are liable to him based upon (1) nondelegable duties in the contract, (2) nondelegable duties arising from the inherently dangerous nature of or peculiar risk created by the work, (3) the control over the subcontractor's work that contractor reserved in the subcontract, and (4) the "Safe Place to Work Statute," § 50-71-201, MCA. We will follow this general format in our discussion of the issues involving the companies. A discussion involving Christian's duty will follow.

NONDELEGABLE DUTY BASED ON CONTRACT

Montana follows the general rule that "absent some form of control over the subcontractor's method of operation, the general contractor and owner of the construction project are not liable for injuries to the subcontractor's employees." Shannon v. Howard S. Wright Construction Co. (1979), 181 Mont. 269, 275, 593 P.2d 438, 441. However, we recognized one of several exceptions to this general rule where nondelegable duties are created by contract. Stepanek v. Kober (Mont. 1981), 625 P.2d 51, 38 St.Rep. 385. Appellant argues that nondelegable duties were created by contract here so as to render the companies liable.

In Stepanek, the nondelegable duty which subjected the general contractor to liability to an employee of a subcontractor was created by a provision in the general contract between the general contractor and Yellowstone County. Specifically, that provision required the general contractor to be "responsible for initiating, maintaining, and supervising all safety precautions and programs" connected with construction. We held that this provision resulted in a duty that could not be delegated to the subcontractor by a

6

provision in the subcontract which purports to shift safety responsibilities to the subcontractor. There is no similar provision in the general contract between MPC and Bechtel in the instant case. In fact, there is no safety provision in the general contract. Therefore, nondelegable duty based on contract does not apply.

NONDELEGABLE DUTY BASED ON INHERENTLY DANGEROUS NATURE OF THE WORK

A general contractor may also owe the employee of a subcontractor a nondelegable duty of safety where the work is "inherently dangerous." See Ulmen v. Schwieger (1932), 92 Mont. 331, 12 P.2d 856. On this issue appellant requests us to adopt §§ 416 and 427, Restatement of Torts, 2d:

> § 416. Work Dangerous in Absence of Special Precautions
>
> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.
>
> § 427. Negligence as to Danger Inherent in the Work
>
> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

We note Comment a to § 416 in the Restatement, which states: "The two rules [§ 416 and § 427] represent different forms of

the same general rules . . ." We will thus consider their application together.

The Supreme Court of North Dakota has interpreted § 416 and § 427 with respect to a sewer trench dug to a depth of six feet in sandy soil. See Peterson v. City of Golden Valley, North Dakota (N.D. 1981), 308 N.W.2d 550. In Peterson, an employee of a contractor with the city was killed when the banks of the trench in which he was working caved in. The trench was not dug according to Occupational Safety and Health Administration (OSHA) regulations or standard protective practices which call for sloping or use of a trench box whenever a trench exceeds five feet in depth. The court held that § 416 and § 427 did not operate to make the City vicariously liable for the omission of the contractor, because "this type of excavation when done with standard precautions, presents no extraordinary risk of caving in." Peterson, 308 N.W.2d at 554. Peterson is on point with the instant case, and we adopt the North Dakota Supreme Court's analysis.

In order for § 416 to apply the work must present "a peculiar risk . . . unless special precautions are taken." Section 427 is only applicable to work "involving a special danger . . . inherent in . . . the work." Here, the type of trenching contemplated in the subcontract presented no peculiar risk or inherent danger. Rather, the risk or danger arose out of a failure to use standard precautions.

The OSHA regulations, project safety manual and deposition of the backhoe operator establish that sloping or using a trench box during trenching is standard procedure. Moreover, the subcontract specifically required the subcontractor to use standard precautions and follow regulations. The injury occurred after the diggers failed to

8

use a trench box that they knew was available. Sections 416 and 427 are thus not applicable. We hold that the companies had no nondelegable duty under the inherent danger or peculiar risk exception to the nonliability rule.

CONTROL RESERVED IN THE SUBCONTRACT

Appellant also contends that the companies' control over the subcontractor renders the companies liable. Section 414, Restatement of Torts, 2d, defines the duty of a general contractor or owner when control over the subcontractor is retained:

> § 414. Negligence in Exercising Control Retained by Employer
>
> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Thus, the general contractor's duty is one of reasonable care. He is not vicariously liable for the subcontractor's negligence under this control exception to nonliability of general contractors and owners.

Here, by the subcontract the companies were to establish a project safety program. However, no control over the day-to-day implementation of the safety program was reserved by the companies. The subcontract places the responsibility for on-site implementation of the safety program and job safety on the subcontractor, COP. Thus, the companies' duty under § 414 extended only to the establishment of the safety program. There is no evidence that this duty was breached.

The companies' duty to exercise reasonable care in its establishment of the safety program is more specifically

9

defined within the Montana Safe Place to Work Statute, § 50-71-201, MCA, which states:

> Every employer shall furnish a place of employment which is safe for employees therein and shall furnish and use and require the use of such safety devices and safeguards and shall adopt and use such practices, means, methods, operations, and processes as are reasonably adequate to render the place of employment safe and shall do every other thing reasonably necessary to protect the life and safety of employees.

In applying the statute to the instant case, we find that the companies had a duty to require COP to use safe procedures and to take reasonable steps to ensure those procedures were followed. Such a duty does not require a general contractor to constantly oversee each individual task of the subcontractor. Only constant supervision could have prevented this accident.

The record is clear and undisputed that the companies required COP to use safety precautions and comply with regulations. The companies utilized daily spot checks and monitored injury reports to make sure the construction was proceeding safely. We find that the companies complied with their duty of reasonable care.

In summary, appellant has failed to establish vicarious liability based on nondelegable duty or breach of a duty based on control. We therefore affirm the District Court's order of summary judgment in favor of the companies.

PROJECT ENGINEER'S DUTY

We will now consider Christian's summary judgment. Appellant, despite ample opportunity at the District Court level and here on appeal, has presented no legal arguments or factual evidence to counter the District Court's conclusion that Christian had no duty of safety. Christian's contract with MPC is in the record and does not address safety.

The District Court's conclusion is supported by this Court's decision in Wells v. Stanley J. Thill and Associates,

10

Inc. (1969), 153 Mont. 28, 452 P.2d 1015. In Wells, the City of Belt contracted with Thill, an engineering company, to design a sewer project for the city. Thill's contract with the city included only engineering and not safety responsibilities. The city then contracted with Fedco, Inc., to construct the project. Wells was employed by Fedco. He was injured in a trench cave-in when safety precautions were not taken. We held that summary judgment in favor of Thill was proper because the duty of the engineer did not include safety and ran to the city and not other contractors.

Our holding regarding project engineers in Wells has not been altered by subsequent changes in Montana law on contractor duties to employees of subcontractors. See Stepanek, supra. We will not alter the holding now. Because the District Court's conclusion is supported by substantial evidence and Montana law, we affirm.

The District Court's order granting summary judgment in favor of Christian and the companies is affirmed.

Chief Justice

We concur:

Justices

Mr. Justice William E. Hunt, concurring in part and dissenting in part:

I concur with the portion of the majority's opinion dealing with nondelegable duties based in reserved control. However, for the reasons stated below I would reverse the District Court and remand for trial.

The majority's construction of §§ 416 and 427, Restatement (Second) of Torts (1981) renders those sections aimless. The majority notes that OSHA regulations call for sloping or support to the sides of trenches to prevent the trench walls from caving in and causing injury to workers. From this the majority concludes that trench digging is not inherently dangerous because trench boxes or sloping usually prevent injury. If the precautions necessary to avoid injury were excluded from the scope of §§ 416 and 427, what would be left? On this kind of interpretation no employer of an independent contractor would ever be liable for any act of negligence in failing to take precautions against inherent risks. This reading of those sections strips them of any purpose. We may as well rely on the common law general rule that employers of independent contractors are not liable for injury caused by the contractors' negligence, without need to analyze the exceptions to that general rule embodied in §§ 416 and 427.

The majority relies on the decision of the North Dakota Supreme Court in Peterson v. City of Golden Valley (N.D. 1981), 308 N.W.2d 550, to ground its interpretation of those sections. However, that interpretation is contrary to the comments to the Restatement and to the interpretation given

12

those sections by the majority of state courts, and by this Court in previous cases.

Section 408, Restatement (Second) of Torts states the general common law rule that the employer of an independent contractor is not liable for the harm caused by the independent contractor. The first of many departures from that rule was taken in Bower v. Peate (1876), 1 Q.B.D. 321. The exceptions to the rule have multiplied so that "[i]ndeed it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions." Shannon v. Wright (1977), 181 Mont. 269, 275, 593 P.2d 438, 441. Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co. (1937), 201 Minn. 500, 277 N.W. 226.

The Restatement notes that the exceptions fall into three categories. Sections 416 and 417 belong to the categories of "nondelegable duties of the employer, arising out of some relation toward the public or the particular plaintiff;" and "[w]ork which is specially, peculiarly, or 'inherently' dangerous." Restatement (Second) of Torts (1981), at 371, 394; Ulmen v. Schweiger (1932), 92 Mont. 331, 247, 12 P.2d 856, 859; A. M. Holter Co. v. Western Mtge. & Warranty Co. (1915), 51 Mont. 94, 99, 149 P. 489, 490. Chesapeake & Potomac Tel. v. Chesapeake Util. (Del. Super. 1981), 436 A.2d 314, 324, 325 n. 11.

Sections 416 and 427 involve duties which for policy reasons may not be delegated by the employer of independent contractors to those contractors. Castro v. State (1981), 114 Cal.App.3d 503, 510, 170 Cal.Rptr. 734, 737; Heath v. Huth Engineers (Pa. Super. 1980), 420 A.2d 758, 760; Smith v. Inter-County Telephone Co. (Mo. 1977), 559 S.W.2d 518. "If the circumstances [of the case] fall within this rule a

primary, nondelegable duty is imposed upon the employer
. . . ." Smith, 559 S.W.2d at 521 (Emphasis added.)

Attention must be turned to the language of those sections:

> Section 416. Work Dangerous in Absence of Special
> Precautions. One who employs an independent
> contractor to do work which the employer should
> recognize as likely to create during its progress a
> peculiar risk of physical harm to others unless
> special precautions are taken, is subject to
> liability for physical harm caused to them by the
> failure of the contractor to exercise reasonable
> care to take such precautions, even though the
> employer has provided for such precautions in the
> contract or otherwise.

> Section 427. Negligence as to Danger Inherent in
> the Work. One who employs an independent
> contractor to do work involving a special danger to
> others which the employer knows or has reason to
> know to be inherent in or normal to the work, or
> which he contemplates or has reason to contemplate
> when making the contract, is subject to liability
> for physical harm caused to such others by the
> contractor's failure to take reasonable precautions
> against such danger.

Along with the majority, I note Comment a to § 416 which
states: "The two rules [§ 416 and § 427] represent different
forms of the same general rules . . . ." I will also consider
them together, although I also note:

> The Rule stated in [§ 416] is more commonly stated
> and applied where the employer should anticipate
> the need for some specific precaution . . . [while]
> . . . § 427 is more commonly applied where the
> danger involved in the work calls for a number of
> possible hazards, as in the case of blasting, or
> repainting carried on upon a scaffold above the
> highway.

Chesapeake & Potomac Tel. v. Chesapeake Util. (Del. Super.
1981), 436 A.2d 314, 326, quoting Restatement (Second) of
Torts (1981), at 395.

The terms "peculiar risk" and "special precautions" may
lead the reader to believe the subject of these sections is
an atypical or heightened risk which would necessitate
extraordinary precautions. However the comments to the

14

Restatement point out, "'[p]eculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must mean an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself . . . arising out of the particular situation created, and calling for special precautions." Restatement (Second) of Torts (1981), at 396, Comment b and 385-86, Comment b. See also Castro v. State (1981), 114 Cal.App.3d 503, 510-511, 170 Cal.Rptr. 734, 738; Griesel v. Dart Industries (1979), 153 Cal.Rptr. 213, 217, 591 P.2d 503, 507; Aceves v. Regal Pale Brew. Co. (1979), 156 Cal.Rptr. 41, 44, 595 P.2d 619, 622; Smith v. Inter-County Telephone Co. (Mo. 1977), 559 S.W.2d 518, 522.

The illustrations to §§ 416 and 427 clearly indicate "special precautions" means precautions specially designed to counter the risk, not extraordinary precautions. Among those special precautions necessitated by the inherent risks of work situations portrayed in the illustrations are a fence around an excavation, shoring up a common wall between two houses when one house is being demolished, and restraining a paint bucket so that it does not fall from scaffolding. These precautions are ordinary in the sense that a reasonably cautious contractor would take them. What is "special" about them is that the particular situation arising out of the work itself calls for precautions specially designed to counter inherent risks.

There are two kinds of negligence by a contractor which will not be ascribed to the employer under §§ 416 and 417. First, a risk created by negligently undertaking a "normal, routine matter of customary human activity" is not a risk peculiar to, that is "arising out of the particular

15

situations created" by, the work itself. Restatement (Second) of Torts (1981), at 385; Griesel v. Dart Industries, Inc. (1979), 153 Cal.Rptr. 213, 217, 591 P.2d at 507. Second, risks collateral, or foreign to the normal or contemplated risks of doing the work are not attributable to the employer of an independent contractor. Restatement (Second) of Torts (1981), at 414; Aceves v. Regal Pale Brew. Co. (1979), 156 Cal.Rptr. 41, 45, 595 P.2d at 623; Shope v. City of Billings (1929), 85 Mont. 302, 309, 278 P. 826, 828. Therefore, the kind of risk left within the scope of §§ 416 and 427 is one that is inherent in the situation created by the work, "recogniz[able] in advance as requiring special precautions." Chesapeake and Potomac Tel. (Del. Super. 1981), 436 A.2d at 330 (referring to the comments to § 426, the "mirror rule" to § 427).

Finally, there is one more section in the Restatement which deserves attention. Section 413 falls in the first category of exceptions to the general rule of employer nonliability. That category of exceptions are those relating to the "[n]egligence of the employer in selecting, instructing, or supervising the contractor." Restatement (Second) of Torts (1981), at 371. Section 413 places a duty upon the employer to provide for the taking of precautions against the dangers involved in work entrusted to a contractor. The comments to that section indicate that one way the employer may provide for the taking of precautions is by requiring in the contract between the employer and contractor that such precautions be taken. While § 413 is similar to § 416, they are based on different policy grounds. Section 413 places a duty on the employer to exercise reasonable care in selecting a contractor and in drafting the

16

contractual requirements placed on that contractor in his discharge of the work. Section 416 is based on the existence of a duty of care owed the public or the particular plaintiff. Castro v. State (1981), 114 Cal.App.3d 503, 510, 170 Cal.Rptr. 734, 737. Comment f to § 413 points out the "fact that the contract under which work is done provides that the contractor shall take the necessary special precautions does not necessarily relieve the employer from liability, since he may be liable under the rule stated in § 416." Restatement (Second) of Torts (1981), at 386. Cf. Ulmen (1932), 92 Mont. 331, 347, 12 P.2d 856, 860. Comment c to § 416 spells out the crucial difference in the two sections:

> Section 416 deals with the liability of one who employs a contractor to do such work, even though he stipulates in his contract or in a contract with another independent contractor that the precautions shall be taken, for bodily harm caused by the negligent failure of either contractor to take such precautions.

Montana has long recognized that an employer may not "set in operation causes dangerous to the person and property of others . . . [and then] divest himself of the primary duty he owes to other members of the community by contracting with others for the performance of work, the necessary and probable result of which is injury to third persons." A. M. Holter Co. v. Western Mtge. & Warranty Co. (1915), 51 Mont. 94, 99, 149 P. 489, 490. See also Fagan v. Silver (1920), 57 Mont. 427, 432, 188 P. 900, 901. In such a case the party authorizing the work is justly regarded as the author of the mischief resulting from it, whether he does the work himself or lets it out by contract." Shope, 85 Mont. at 309, 278 P.2d at 828.

In the case at hand, Montana Power Company contracted with Bechtel, who contracted with COP, for the work. The contract between Bechtel and COP did include safety provisions. Clearly then Montana Power Company and Bechtel are not liable under the rule of § 413. However, they may not escape liability if the rules of §§ 416 or 427 apply. The majority opinion characterizes sloping or using a trench box when digging a trench as "standard procedures." I agree with that characterization as far as it goes. What the majority fails to see is that these standard procedures are specially designed to guard against dangers inherent in, or peculiar to, trenching.

In A. M. Holter Co. v. Western Mtge. and Warranty Co. (1915), 51 Mont. 94, 149 P. 489, a contractor hired by Western Mortgage to repair a roof negligently left roofing materials atop the building. The wind blew these materials off the roof and caused damage to a nearby building. The jury found, and this Court affirmed, that Western Mortgage was liable for "failing to anticipate and guard against the probable consequences" of not taking precautions necessary to prevent the materials from being blown off the roof. A. M. Holter, 51 Mont. 94, 99, 149 P. 489, 491.

Similarly in Ulmen v. Schweiger (1932), 92 Mont. 331, 12 P.2d 856, the jury found work involving digging and cementing a culvert across a highway inherently dangerous. In that case the subcontractor negligently failed to place detour signs and barriers and Ulmen was injured by driving over the culvert at a speed reasonable for highway travel. In affirming the judgment against the general contractor who employed the negligent subcontractor this Court noted, "The erection and maintenance of adequate barriers and detour

18

signs to warn the traveling public was the very thing that would prevent the work from being intrinsically dangerous." Ulmen, 92 Mont. at 346, 12 P.2d at 859. It is my position that a jury could well find that the use of sloping or a trench box, as well as frequent checks on the laser marking the grade of the trench, were the very things that would have prevented the risks inherent in trench digging. See Barron v. United States (D. Hawaii 1979), 473 F.Supp. 1077, Aff'd. in relevant part; Barron v. United States (9th Cir. 1981), 654 F.2d 644; Smith v. Inter-County Telephone Co. (Mo. 1977), 559 S.W.2d 518; Griesel v. Dart Industries, Inc. (1979), 153 Cal.Rptr. 213, 591 P.2d 503; Heath v. Huth Engineers, Inc. (Pa. Super. 1980), 420 A.2d 758 (all cases where trench-digging under the circumstances of each case was found to be inherently dangerous). Because it is a factual question whether particular work is inherently dangerous under the circumstances, summary judgment is inappropriate. Chesapeake, (Del. Super. 1981), 436 A.2d at 329; Castro (1981), 170 Cal.Rptr. 738; Smith (Mo. 1977), 559 S.W.2d at 524.

Yet there is one question of law which would have to be answered before the case could be remanded for trial. Case law prior to the adoption of the 1972 Montana Constitution held that nondelegable duties ran only to third parties and not to employees of a contractor or subcontractor. State ex rel. Great Falls Nat'l Bank v. District Court (1969), 154 Mont. 336, 463 P.2d 326. However, Art. II, § 16 of the Montana Constitution guarantees full legal redress, with a workers' compensation exception for the liability of fellow employees and immediate employers. In Stepanek v. Kober Constr. (Mont. 1981), 625 P.2d 51, 55, 38 St.Rep. 385, 396,

we held that this constitutional provision mandated that a nondelegable duty based in contract did run from an employer of an independent contractor to that contractor's employees. I can see no language in the Montana Constitution creating an exception to the right of full legal redress riding on a distinction between a nondelegable duty based on inherent risks and a nondelegable duty based in contract.

Therefore I would hold that the Montana Power Company and Bechtel have nondelegable duties running to the appellant Kemp if, on remand, the jury would find that inherent risks were present. Mydlarz v. Palmer/Duncan Construction Co. (Mont. 1984), 582 P.2d 695, 707, 41 St.Rep. 738, 751 (Morrison, J. dissenting). I would remand for jury determination of whether inherent risks were present and whether a duty to take precautions was breached. This determination would necessarily include whether, on the facts involved, COP violated the Montana Safe Place to Work Statute, § 50-71-201, MCA. Any violation of this statute would be attributable to Bechtel and Montana Power Company, if the jury also finds the trenching in previously trenched ground, conducted in the manner it was, inherently dangerous.

William E. Hunt

The Hon. Joseph B. Gary joins in the dissent of

Mr. Justice William E. Hunt, Sr.

District Judge, Sitting for
Mr. Justice John C. Sheehy

21

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

I concur in the very learned discussion of Mr. Justice Hunt contained in his dissent filed to the majority opinion. I add these comments.

Trenching in soft ground, as was done here, involves inherent risk unless certain precautions are taken. The fact that those precautions are necessary to eliminate the risk does not avoid application of "nondelegable duty".

Trenching involves inherent risk imposing a nondelegable duty upon the owner and general contractor. The principals then become liable for the negligence of COP, including the foreman. Any negligence on the part of the plaintiff should be submitted to the jury under the comparative negligence statute.

The majority opinion, in light of Ulmen v. Schweiger (1932), 92 Mont. 331, 12 P.2d 856, would be bound to come to the same conclusion except the majority opinion finds trenching to not be "work dangerous absent special precautions." Trenching is obviously dangerous in the absence of special precautions and that is why special precautions were to be taken. I am at a loss to understand how the majority comes to its conclusion except to follow the North Dakota Supreme Court. The Montana position as articulated by the majority runs contrary to the Restatement illustrations and the decisions of nearly every other jurisdiction which has treated trenching cases.

This case should be remanded for trial under an instruction which submits nondelegable duty as defined in section 416, Restatement (Second) of Torts (1981). The jury might find that the plaintiff and COP's foreman were equally negligent and equally responsible for the plaintiff's injuries. The negligence of the foreman would become the

22

negligence of Bechtel and Montana Power Company. Under these circumstances the plaintiff's recovery would be reduced by 50% but the plaintiff would still recover the remaining 50% of his total damages.

With these comments, I concur in the dissent of Mr. Justice Hunt.

Justice