**Elsie HAMMAN, Plaintiff,**

**v.**

**UNITED STATES of America, Washington Iron Works, a Washington corporation, Morrison-Knudsen Company, Inc., a Delaware corporation, Perini Corporation, a Massachusetts corporation, Walsh Construction Company, Inc., an Iowa corporation, and Kaiser Company, a Nevada corporation, jointly and severally, Defendants.**

**Arlene Hartung REED, Administratrix of the Estate of her deceased husband, Adam Hartung, Plaintiff,**

**v.**

**UNITED STATES of America et al., Defendants.**

**Anna LOYNING, Administratrix of the Estate of her deceased husband, Sidney A. Loyning, Plaintiff,**

**v.**

**UNITED STATES of America et al., Defendants.**

**Alice R. BLANCO, Individually and as Guardian ad Litem for Tony Jerome Blanco, David Martin Blanco, Sylvia Irene Blanco, Angela Fern Blanco and Rose Kathleen Blanco, and as Administratrix of the Estate of Frank Jerry Blanco, Plaintiffs,**

**v.**

**UNITED STATES of America et al., Defendants.**

**Civ. Nos. 476, 477, 522, 493.**

United States District Court
D. Montana,
Billings Division.

March 14, 1967.

See also 267 F.Supp. 420.

In causes 476, 477 and 522: Marcus, McCroskey, Libner, Reamon, Williams & Dilley, Muskegon, Mich., Lee Overfelt, Billings, Mont., J. H. McAlear, Red Lodge, Mont., and Robert H. Wilson, Hardin, Mont., for plaintiffs.

In cause 493: Sandall, Moses & Cavan, Billings, Mont., for plaintiffs.

Moody Brickett, U. S. Atty., and Robert T. O'Leary, Asst. U. S. Atty., Butte, Mont., for defendant United States.

Cooke, Moulton, Bellingham & Longo, Billings, Mont., for defendant Washington Iron Works.

Anderson, Symmes, Forbes, Peete & Brown, Billings, Mont., for defendants Morrison-Knudsen Co., Inc., Perini Corp., Walsh Const. Co., Inc., and Kaiser Co.

## ORDER AND MEMORANDUM OPINION

JAMESON, Chief Judge.

Defendant United States of America has filed a motion to dismiss or for summary judgment on the grounds (1) that the plaintiffs' third amended complaints fail to state a claim against the defendant upon which relief can be granted, and (2) that based upon the pleadings, interrogatories, depositions, affidavits and exhibits, the defendant is entitled to judgment as a matter of law.

In each of the four actions, which have been consolidated for trial, the plaintiff seeks damages for the death of a workman who was killed when a cableway "man-skip" used in the construction of Yellowtail Dam and in which the decedent was riding, ran against a canyon wall and spilled its occupants to the floor of the canyon. The decedents were all employees of Yellowtail Constructors,[1] which was building Yellowtail Dam pursuant to a contract with the Bureau of Reclamation, an agency of the United States Government.

The United States was joined as a defendant pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)[2] and § 2671 et seq. (Chap. 171).[3] At the outset it is recognized

---

1. Yellowtail Constructors was composed of the defendants Morrison-Knudsen Company, Inc. (together with its subsidiary, F & S Construction Co.), Perini Corporation, Walsh Construction Company, Inc. and Kaiser Company.

2. 28 U.S.C. 1346(b) provides in part: "Subject to the provisions of chapter 171 of this title, the district courts, * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for * * * personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

3. In discussing the Federal Tort Claims Act in Indian Towing Co. v. United States, 1955, 350 U.S. 61, 68, 76 S.Ct. 122, 126, 100 L.Ed. 48, the Court said: "* * * The broad and just purpose which the statute was designed

that the United States may be held liable only for a "wrongful act or omission" of an employee of the Government and not for any negligent act of an independent contractor. See Nyquist v. United States, D.Mont.1964, 226 F.Supp. 884, and cases there cited; United States v. Page, 10 Cir. 1965, 350 F.2d 28, 34.

### Motion To Dismiss

Paragraph 17 of the third amended complaint alleges that as "possessor of the land and as contractee" the United States has the following nondelegable duties:

(a) The common law duty of providing a reasonably safe place to work to plaintiff's decedents;

(b) The duty to employ competent contractors with proper equipment, proper safety programs and trained personnel;

(c) The duty of warning plaintiffs' decedents of all hazards of which it knew or of which it should have known in the exercise of due care;

(d) The duty to exercise with due care any control which it reserved to itself by contract;

(e) The duty to use reasonable care.

Paragraph 20 alleges that the United States violated its duties in that:

(a) It failed to employ a competent contractor * * *;

(b) The construction of the Yellowtail Dam was inherently hazardous work and there was a nondelegable duty upon the Government

as possessor to use reasonable care and to provide a reasonably safe place to work for contractors' employees, and this duty was violated in four respects specified in the complaint; and

(c) The Government retained a right to control the contractors' performance and exercised such control in a negligent manner, as specified in the complaint.

█ It is well settled that a "complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim". 2 Moore's Federal Practice 2245, Para. 12.08. For a discussion of this rule in a factual situation comparable to the instant cases, see Benson v. United States, N.D.Cal.1957, 150 F.Supp. 610.[4]

In my opinion it does not appear to a certainty that the plaintiffs would be entitled to no relief under any state of facts which could be proved in support of the claim alleged. The motions to dismiss accordingly are denied.[5]

### Motion For Summary Judgment

█ The rules to be followed in determining when summary judgment should be granted may be summarized as follows:

(1) Summary judgment is proper only where there is no genuine issue of fact or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable

---

to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws."

4. The court said in part:
"If it be true, as alleged, that defendant, United States 'undertook and agreed to furnish' the walkways, and exercised control over such walkways, then under the California law, it would be chargeable with negligence in providing a walkway, the condition of which was danger-

ous and defective. (Citing cases). Furthermore, if it be true that the United States retained management and control over the particular instrumentality which caused the injury, and exercised such control in a 'careless and negligent manner', then, under the California law it would be chargeable with negligent conduct, and, if adequate proof is made, liable to plaintiff for his injuries." (150 F.Supp. at 612).

5. Many of the principles of law discussed later herein in considering defendants' motions for summary judgment apply equally to the motions to dismiss.

to the adverse party, the movant is clearly entitled to prevail as a matter of law. In other words, there is then no genuine issue of a material fact.

(2) All doubts as to the existence of a genuine issue as to any material fact must be resolved against the moving party.

(3) An issue of fact may arise from countering inferences which are permissible from evidence accepted as true.

(4) The court may not weigh evidence or resolve issues in determining a motion for summary judgment.

(5) Issues of negligence are not ordinarily susceptible of summary judgment, but summary judgment may be proper on the basis of extraneous materials that do not involve any real issue of credibility and which clearly establish that there is no genuine issue of material facts as to certain controlling matters.[6]

### Montana Law

The parties agree that Montana law is controlling, unless it is in conflict with the provisions and exceptions of the Federal Tort Claims Act. The doctrine of sovereign immunity of course permits suit only to the extent that immunity is expressly waived by the Act.

While there are no Montana cases precisely in point, the Montana court in a number of cases has considered the obligation of a landowner or contractee to the public where work is performed by an independent contractor. In A. M. Holter Co. v. Western Mortgage and Warranty Title Co., 1915, 51 Mont. 94, 98–99, 149 P. 489, 490, the court laid down the rule that "an employer may not divest himself of the primary duty he owes to other members of the community by contracting with others for the performance of work, the necessary or proba-

ble result of which is injury to third persons" and that he must take "all reasonable precautions to anticipate, obviate and prevent these probable consequences."

In Neyman v. Pincus, 1928, 82 Mont. 467, 484, 267 P. 805, 809, the court held that the rule in Holter was an exception to the general rule that "where the relation of independent contractor exists, and due diligence has been exercised in selecting a competent contractor, and the thing contracted to be done is not a nuisance if precautionary measures are used, and injury result, not from the fact that the work is done, but from the wrongful and negligent manner in which it is done by the contractor or his servants, the contractee is not liable therefor."

The above rule and exception were followed in the subsequent cases of Shope v. City of Billings, 1929, 85 Mont. 302, 309, 278 P. 826, and Ulmen v. Schwieger, 1932, 92 Mont. 331, 345, 354–355, 12 P.2d 856. On the basis of these cases the court in Fegles Construction Co. v. McLaughlin Construction Co., 9 Cir. 1953, 205 F.2d 637, made the following statement of Montana law:

"It is the general rule that an employer or primary contractor is not liable for the torts of an independent contractor. This rule is based upon the theory that the employer does not possess the power of controlling the person employed as to the details of the stipulated work and therefore is not answerable for an injury resulting from the manner in which the work is carried out. This general rule is subject to exceptions, one of which is applicable here. An employer or primary contractor is liable for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently or intrinsically dangerous. * * * This exception places an

---

6. See Cameron v. Vancouver Plywood Corporation, 9 Cir. 1959, 266 F.2d 535, 539; Consolidated Electric Co. v. United States for Use of Gough Industries, Inc., 9 Cir. 1966, 355 F.2d 437, 438; United States for Use of Austin v. Western Elec. Co., 9 Cir. 1964, 337 F.2d 568, 575; Wright, Federal Courts (1963) § 99; 6 Moore's Federal Practice 2584–5, para. 56.17(42).

absolute, nondelegable duty upon the employer to see that all reasonable precautions shall be taken during the performance of the work to the end that third persons may be adequately protected against injury." (205 F.2d at 640).

Does this nondelegable duty extend to an employee of an independent contractor; and if so, does it apply where the Government is the contractee?

In no case decided by the Montana court was the "third person" an employee of an independent contractor. In the Fegles case the injured third party was a separate subcontractor working on the same project.

The effect of Ulmen v. Schwieger, supra, was considered by this court in O'Leary v. James & Wunderlich, 1960, D.C., 192 F.Supp. 462, aff'd 288 F.2d 462, where the decedent was a painter hired by a subcontractor pursuant to a written contract, although he had been carried on the payroll of the subcontractor and was found to be an employee by the Industrial Accident Board of the State of Montana. In holding that the rule of Ulmen v. Schwieger was not applicable, it was said:

"Does the non-delegable duty of a contractor to the public extend to one who by written contract has agreed to perform according to specifications the very work from which the alleged injury arose? It does not appear to me that the rule of Ulmen v. Schwieger may be so extended, even if we assume that the work which O'Leary was performing was inherently dangerous. O'Leary himself was responsible for the method and manner of work. He agreed to perform according to the specifications upon which plaintiffs must rely.

\*    \*    \*    \*    \*    \*

"Under Ulmen v. Schwieger, defendants might be liable to the public or other third persons for any negligence of either Hakes or O'Leary. They are not liable to O'Leary himself." (192 F.Supp. at 474–475).

In the O'Leary case this court also set forth the exceptions to the general rule of nonliability on the part of a prime contractor to an employee of an independent contractor as follows:

"Those cases in which the prime contractor has been held liable to an employee of an independent contractor who comes upon the premises to perform the work which results in his injury are cases where the prime contractor either (1) retains direction and control over the method and manner of work; or (2) fails to provide a reasonably safe place to work or to warn of any hidden or lurking danger therein; or (3) is responsible for the dangerous condition, such as furnishing defective equipment; or fails to coordinate adequately the work of independent sub-contractors." (192 F. Supp. at 473–474).

This court suggested in Zimmer v. California Company, 1959, 174 F.Supp. 757, 763, that the Montana court would "follow the general rule that the contractee owes to the employee of the independent contractor the same duty which he owes to any invitee or business visitor lawfully on the premises",[7] (citing Annotation, 1953, 31 A.L.R.2d 1379; 57 C.J.S. Master and Servant § 603, p. 375), recognizing, however, that, "The duty of the contractee of course depends somewhat on the extent of control retained by the contractee."[8]

---

**7.** The rule in Montana with respect to an invitee was well summarized in Cassady v. City of Billings, Mont.1959, 135 Mont. 390, 340 P.2d 509, 510:

"It is well-established in Montana that a landowner is obligated toward an invitee to either use ordinary care to have the premises reasonably safe, or to warn the invitee 'of any hidden or lurking danger therein'. Milasevich v. Fox Western Montana Theatre Corp., 118 Mont. 265, 270, 165 P.2d 195, 197, and see Restatement, Torts, Negligence, § 343."

**8.** This rule is well stated by Corpus Juris Secundum:

"Where the contractee retains control of the premises on which the work is being

Neither the Supreme Court of Montana nor this court has considered any case involving possible liability of the United States as contractee to an employee of an independent contractor. The cases in other jurisdictions are in conflict,[9] due in part to differences in state law and in part to different factual situations, particularly with reference to the degree of control retained and exercised by the Government.

It is clear, as noted supra, that there can be no recovery under the Federal Tort Claims Act in the absence of some negligent act or omission on the part of an employee of the United States. The consent of the Government does not extend to situations of strict liability, in the absence of fault. On this basis two cases from the Eastern District of Tennessee (Stratton v. United States and Pierce v. United States, supra), upon which the respective parties rely, may be reconciled. In Pierce the court found evidence of negligent acts on the part of governmental employees. In Stratton there was no proof of negligence by any employee of the Government.[10]

### Retention of Control over Work

The contract under which the independent contractor operated in the instant cases provided that the Government could demand full information concerning the materials used in the work for approval, and that the Government contracting officer could require the contractor to remove from the work any employee that the contracting officer deemed incompetent, careless, insubordinate, or otherwise objectionable. (General Provisions, cl. 8). The Government reserved the right to inspect or examine all material and workmanship. (General Provisions, cl. 9). The contractor's sequence of operations, method of operation, and forces employed were subject to the approval of the contracting officer. (Special Conditions, par. 19(b)). The contract required that the contractor submit to the contracting officer for

---

done, it is his duty to use reasonable care to keep them in a reasonably safe condition and he will be liable for injuries to servants of the contractor resulting from a breach of this duty, * * * but, where the working place is furnished and maintained by the individual contractor, possession of the site having been delivered to him for the purposes of constructing a building, the owner owes the employees only the negative duty, imposed by law, of refraining from rendering the place unsafe by any act of his own, and not an affirmative duty to keep the premises safe for the workmen." 57 C.J.S. Master and Servant § 603, p. 376.

9. Cases holding that the Government does not have any nondelegable duty with respect to employees of an independent contractor include Lipka v. United States, N.D.N.Y.1965, 249 F.Supp. 213, aff'd 369 F.2d 288; Blaber v. United States, 2 Cir. 1964, 332 F.2d 629; United States v. Page, 10 Cir. 1965, 350 F.2d 28; Richardson v. United States, W.D.Tenn.1966, 251 F.Supp. 107; Stratton v. United States, E.D.Tenn.1962, 213 F.Supp. 556.
   Cases permitting recovery include Pierce v. United States, E.D.Tenn.1955, 142 F. Supp. 721, aff'd. 235 F.2d 466; Schmid v. United States, 7 Cir. 1959, 273 F.2d 172.

10. In Stratton v. United States the court said:
   "The sovereign has immunity from suit without its consent. The extent of the consent granted by the Federal Tort Claims Act does not extend to situations of strict liability, in the absence of fault, for an unusual or dangerous activity; thus, liability under this Act cannot arise by virtue of ownership by the United States of 'an inherently dangerous commodity' or property, or of engaging in an 'extra-hazardous' activity. United States v. Hull, C.A.1st (1952), 195 F.2d 64, 67, cited with approval in Dalehite v. United States (1953), 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; Pierce v. United States, D.C.Tenn. (1956), 142 F.Supp. 721, 734, affirmed C.A.6th, 235 F.2d 466. Negligent acts on the part of governmental employees were found to have been present in Pierce, supra, and the recovery in Dalehite, supra, was reversed on another theory. The Supreme Court emphatically construed the Federal Tort Claims Act nonetheless as creating no liability on the part of the government where, as in the case at bar, none of its employees is at fault. Dalehite, supra." (213 F. Supp. at 560).

418

approval all the drawings and data for proposed equipment. (Special Conditions, par. 14(b)).

However, the contract also provided that the contractor should be solely responsible for the adequacy, efficiency, use, protection, maintenance, repair and preservation of the plant and equipment used. (Special Conditions, par. 17(e). The contractor was required to supervise all construction (General Provisions, cl. 10), to be responsible for all damages to persons or property as a result of his fault or negligence (General Provisions, cl. 11), and to comply with all pertinent provisions of the Bureau of Reclamation Safety Handbook (General Conditions, par. 10).

A similar contract was construed in Kirk v. United States, 9 Cir. 1959, 270 F.2d 110, where an employee of an independent contractor doing dam work for the United States was killed when a scaffold collapsed and he fell into a river. The plaintiff contended that the Government was negligent in not enforcing the safety regulations as to safety belts, nets and rescue equipment, and in not inspecting more carefully the scaffold and the methods used to move it. In affirming a judgment in favor of the United States, the court said in part:

" * * * The fact that the United States retained the right to inspect the work under construction to see that the provisions of the contract were carried out and also retained the right to stop work if they were not is not sufficient in itself to make the United States liable for damage resulting from negligence of the contractors in their performance of the contract." (Citing cases). (270 F.2d at 116).[11]

In a concurring opinion [12] Judge Pope questioned the holding in the majority opinion that the "voluntary assumption" of a program of accident prevention and safety "should not create liability on the part of the defendant to the employees of a contractor where the performance, or failure to perform, in no wise increases the hazard to the employees of the contractor beyond that which would otherwise have been present". Judge Pope quotes from Indian Towing Company v. United States, supra: "[I]t is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good samaritan' task in a careful manner." (350 U. S. at 64, 76 S.Ct. at 124). He reasons that this principle "might be applied to demand a duty on the part of the Government and the corps of engineers of the Army to exercise reasonable care in the performance of the service which was voluntarily undertaken by them in the contract and in the practical operation of the construction enterprise." [13]

In summary, the right of recovery against the United States in these cases depends primarily upon (1) the extent of control retained and exercised by the United States, and (2) whether any negligent acts or omissions of its employees proximately caused the fatal accident. The Government contends that

11. Other cases reaching the same result include United States v. Page, supra 350 F.2d at 30; Blaber v. United States, supra; Cannon v. United States, 7 Cir. 1964, 328 F.2d 763; Buchanan v. United States, 8 Cir. 1962, 305 F.2d 738.

12. Judge Pope concurred in the result on the ground that the trial court correctly found that the decedent's own negligence was a proximate cause of the accident.

13. Plaintiffs rely upon Quinones v. Township of Upper Moreland, 3 Cir. 1961, 293 F.2d 297, wherein it was held that under Pennsylvania law the employer of an independent contractor was liable where he retained control of some aspects of the work and failed to exercise that control with reasonable care. The retention of control was predicated upon the fact that the contractee's inspector knew that the contract specifications were not being complied with, and he failed to order such compliance. To the extent that the holding in this case may be in conflict with Kirk v. United States, this court of course is bound by Kirk.

depositions and exhibits on file show that any control it may have exercised was the mere general supervisory control which raises no duty, and that there is no showing of negligence on the part of any Government employees. Plaintiffs contend that the Government "controlled the design, installation and use of the cableway", had in excess of 140 supervisors on the job, and generally was in such control to raise a duty, and that their evidence will show negligent acts and omissions of Governmental employees as a proximate cause of the deaths.

■ There has been extensive discovery by way of depositions. Both parties refer to testimony in the depositions in support of their respective contentions. It would serve no useful purpose to review the contentions in detail. In considering motions for summary judgment the court may not weigh testimony and must resolve any doubts against the moving party. I have concluded that the motions should be denied and the plaintiffs be given an opportunity to submit evidence in support of their positions.[14]

### Alleged Employment of an Incompetent Contractor

Plaintiffs also predicate liability of the Government on the ground that it employed an incompetent contractor. This function would come under the exception in 28 U.S.C. 2680(a) which provides in pertinent part:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee

of the Government, whether or not the discretion involved be abused."

It was held in Dalehite v. United States, supra, that "the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion." (346 U.S. at 35–36, 73 S.Ct. at 968).

In United States v. Hunsucker, 9 Cir. 1962, 314 F.2d 98, 104, the court said: "Although portions of Dalehite are no longer authoritative (citing Rayonier, Inc. v. United States, 1957, 352 U.S. 315, 319, 77 S.Ct. 374, 1 L.Ed.2d 354), the distinction referred to in Dalehite between decisions made on the planning level as against decisions made on the operational level has been accepted by several courts." (Citing cases, including United States v. Ure, 9 Cir. 1955, 225 F.2d 709).

■ It is clear that the Government is immune from suit with respect to the exercise of discretion at the "planning level", although a decision at the operational level may afford the basis for actionable negligence under the Federal Tort Claims Act. It seems clear also that the award of a 40 million dollar construction contract would be an exercise of discretion at the planning level rather than at the operational level, and that the United States would be immune from suit based upon alleged negligence in employing the contractor. See Lipka v. United States, supra, 249 F.Supp. at 216.[15]

For the reasons herein set forth, it is ordered that the motion of the defendant United States of America to dismiss or for summary judgment is denied in each of the above entitled actions.

---

14. All of the cases upon which the Government relies involved judgments on the merits after trial and not dismissals or summary judgments without trial.

15. See also unreported decision of Judge W. D. Murray in O'Connell v. United States, D.Mont., Helena Division Civil 860, filed March 9, 1964.